## Staunton.

### IDEAL STEAM LAUNDRY, ET AL. v. ANDY WILLIAMS.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Woods, Chitwood, Coxe & Rogers*, for the appellant.

*Engleby & Engleby* and *C. E. Hunter*, for the appellee.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from an award of the Industrial Commission in favor of Andy Williams against J. T.

Eanes, trading as Ideal Steam Laundry, and Federal Mutual Liability Insurance Company, a corporation.

Claimant was employed by J. T. Eanes, trading as Ideal Steam Laundry, at a wage of $20.00 per week. Though carried on the books of the laundry as an employee thereof and required to work four days a week as janitor, he was also required to work one day a week at the home of Eanes and also one day a week at the home of H. O. Malone, superintendent of the laundry, in consideration of extra duties performed at the laundry by Malone. While at the homes of Eanes and Malone, claimant did gardening, domestic work and odd jobs about the premises as he was directed by them or their wives. Although subject to recall if his services were required at the laundry, claimant, while working at the home of Malone, was under the control of Malone and his wife, both as to the work performed and the method of doing it.

On March 15, 1928, while engaged in building a grape arbor at the home of Malone, claimant attempted to drive a nail in a post. The nail glanced from the post and struck claimant in his left eye, totally destroying the vision thereof.

■ Upon the hearing by the Commission, it was held that Williams was, at the time of the accident, an employee of the Ideal Steam Laundry, was entitled to receive compensation from his employer and the latter's insurance carrier, for a period of one hundred weeks. It is from that award this appeal was allowed.

Appellants assign as error the action of the Industrial Commission in allowing claimant compensation, for the following reasons:

"First, the claimant was at the time of the accident an employee of Malone and not of the laundry;

"Second, that as to the work in which the claimant was engaged at the time of the accident he was a 'farm laborer and domestic servant,' 'not in the usual course of the trade, business, occupation or profession of the employer'."

A consideration of the first contention involves the question of the status of a loaned employee, as the findings of fact show that although claimant was in the general employment of the laundry, he was at the time of the accident a special employee of Malone, under his control, though liable to recall by the laundry.

The Virginia compensation act (Acts 1918, chapter 400, as amended) is silent with reference to the status of a loaned employee, and it becomes necessary to ascertain the rights of the employee against his general and special employers.

In *Atlantic Coast Line R. Co.* v. *Treadway's Admr.*, 120 Va. 735, 93 S. E. 560, 562, 10 A. L. R. 1411, it appears that an interlocking signal operator, employed, paid and controlled by the Southern Railway Company, was directed to perform certain services for the Coast Line Company in consideration of the crossing privilege extended by the latter to the former company. While engaged in the performance of d ties for the latter company he was killed. The action was brought by the administrator under the Federal employer's liability act (45 U. S. C. A. sections 51–59) against the Coast Line Company, and as the Federal act contained no express provision covering such a situation, it became necessary for the court to determine whether or not the deceased was, under the facts shown, an employee of the Coast Line Company. After holding that the "relationship of employer and employee is the same as that of master and servant,"

the court then proceeded as follows to discuss the general principles involved:

■ "In the law of master and servant the principles of the common law determining when this relationship exists are well settled. At common law, upon the question of whether the relationship of master and servant exists, there are four elements which are considered:

"(1) Selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action. Robert & Wallace, Employer's Liability (4th ed.), page 78.

"But, as the last cited author says, the first, second and third of these elements are not essential to the relationship. *Id.* pages 79–82. The 'power of control' is the most significant element bearing on the question, in the opinion of this author, gathered by him from the authorities. *Id.*, pages 85, 87, 88. See also, note 37 L. R. A., pages 38–43. As said in the case of *Standard Oil Co. v. Anderson*, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480:

" 'In many of the cases the power of substitution or discharge, the payment of wages, and other circumstances bearing upon the relation, are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control'."

■ In that case (reading from the syllabus) it is expressly held: "A servant may be transferred from his service for one master—who may have made the express contract of employment of the servant and may pay the latter his wages, and be his general master— to the service of another person other than his general master; in which case—(1) The special master is alone liable to third persons for injuries caused by such acts

as the special servant may commit in the course of his employment; (2) the special servant must look to the special master for his indemnity, if he is injured, while the stipulated work is in progress, by dangerous conditions resulting from the special master's failure to fulfil one of those duties which the law imposes upon the masters for the benefit and protection of their servants."

The decision fixes the status of a loaned employee and gives a right of action only against the special employer. The question then arises, did the legislature, in the enactment of the compensation act, intend to change the law in this respect?

An examination of the English workmen's compensation act, upon which our act is primarily based, discloses a material change in the common law rule. In that act there is a special provision that a general employer shall "be deemed to continue to be the employer of the workman whilst he is working for that other person." No such provision appearing in the Virginia act, we must assume that it was the intention of the legislature that the common law rule should apply in fixing the status of a loaned employee. The only attempt of the legislature to define an employee is found in section 2, which reads in part: "Employee shall include every person, including a minor, in the service of another under any contract of hire or apprenticeship, written or implied * * *."

In *Scribner's Case*, 231 Mass. 132, 120 N. E. 350, 351, 3 L. R. A. 1178, construing a similar provision in the Massachusetts statute (St. 1911, chapter 751, as amended), the court held that the common law rule had not been changed by the enactment of the workmen's compensation act. There it is said: "This well established principle of the common law which holds that an employee who is lent to a special employer as

distinguished from his general employer, and who assents to the change of employment, becomes the servant of the employer to whom he is lent, applies as well to cases arising under the workmen's compensation act as to those at common law."

█ Our conclusion is that both under the common law rule as to a loaned employee and the statutory definition of an employee, claimant was, at the time of the accident, an employee of Malone and his claim for compensation does not fall within the provisions of the Virginia compensation act. This conclusion renders it unnecessary to discuss the second contention of appellants.

The order of the Commission will be reversed.

*Reversed.*