**Salem**

## VIRGINIA POLYTECHNIC AND STATE UNIVERSITY, AND CHARTER OAK FIRE INS. CO.

v.

## ROBERT FRYE T/A HOME IMPROVEMENT, et al.

No. 1010-87-3

Decided August 16, 1988

COUNSEL

Richard D. Lucas (James W. Jennings, Jr., Woods, Rogers & Hazlegrove, on brief), for appellants.

James C. Joyce, Jr.; Richard M. Thomas; James L. Hutton (Nicholas L. Lampros; William J. McGhee; Gentry, Locke, Rakes & Moore; Lichtenstein, Thomas & Cleaveland; Gilmer, Sadler, Ingram, Sutherland, and Hutton, on briefs), for appellees.

OPINION

**COLEMAN, J.** — In this workers' compensation appeal, we consider the existence and the extent of the "labor broker exception" to the special employer rule. Whether a labor broker exception exists and applies will determine which of two employers is responsible under the Workers' Compensation Act for payment of death benefits on behalf of the claimants' decedent. Frye successfully argued before the commission that Virginia Polytechnic Institute and State University (hereafter VPI) was the special employer of the decedent. VPI urges that because the decedent was only its temporary worker paid and managed by Frye, and because Frye contracted with VPI to secure workers' compensation coverage, Frye and its insurance carrier should be liable for the benefits due to the claimants.

Because VPI's staff is not sufficient to maintain its grounds and buildings, VPI lets public bids for outside suppliers to furnish various services. In 1985, Frye Home Improvement won the masonry bid and agreed to provide skilled laborers, including masons and trade helpers, on an "as needed, when needed basis." VPI paid Frye $13.95 per hour for skilled masonry labor, and Frye paid its workers $8.00 per hour, less deductions such as taxes and disability insurance premiums. The overage went to Frye for costs, including workers' compensation insurance premiums, and for profit. The labor contract provided that neither Frye nor any of its employees should be deemed employees of VPI while performing under the agreement, and Frye agreed to maintain insurance "to protect him from claims under the Workers' Compensation Act." Frye further agreed to indemnify VPI for all claims and costs arising out of the temporary employment. VPI viewed Frye as a

labor broker, although the company also engaged in odd jobs and did light construction work elsewhere.

Bruce Mannon, a mason, was a Frye employee sent to work at VPI. The mason foreman at VPI told Mannon each day where to work and what should be done. He periodically checked on Mannon throughout the day. Frye was not allowed on the campus to supervise any of its workers. Mannon worked primarily on masonry projects until that work ended. VPI then asked Mannon whether he would assist in roofing a house, to which he agreed. On July 9, 1985, while cleaning the roofing area, Mannon was electrocuted when his ladder touched overhead electrical wires.

Mannon's widow, Anita, filed a claim for death benefits pursuant to Code § 65.1-65, naming Frye as the primary employer and VPI as the statutory employer. The deputy commissioner held that because VPI was a special employer and Mannon a loaned employee, VPI was liable. Further, he ruled that VPI had defended the claim unreasonably and was therefore liable under Code § 65.1-101 for attorney's fees of $11,550, plus costs. On review, the full commission affirmed.

On appeal, VPI argues that it was not a special employer because it did not exercise the requisite control. It also argues that even if it were the special employer, it is not liable because Frye was a labor broker who contracted to secure workers' compensation insurance for the workers it sent to VPI.

The "special employer" rule is a test used to determine which of two employers is liable for compensation benefits to an injured employee. The hallmark of the rule is control. The Workers' Compensation Act does not mention special employers or loaned employees; the rule was borrowed from the common law relating to master-servant relationships to resolve dual employer situations in the workers' compensation context.[1] *See Ideal Steam Laundry v. Williams*, 153 Va. 176, 179, 149 S.E. 479, 480-81

---

[1] The *Ideal Steam Laundry* court noted that although the Virginia Workers' Compensation Act was based primarily on the English Workers' Compensation Act, the Virginia Act did not contain the section found in the English counterpart that provided that a general employer shall " 'be deemed to continue to be the employer of the workman whilst he is working for that other person.' " 153 Va. at 181, 149 S.E. at 481. The court concluded that the absence of such a provision in the Virginia act indicated the intention of the legislature that the common-law loaned employee rule should apply.

(1929). The doctrine provides that the loaned employee must look to his or her special employer for indemnity for injuries suffered while performing the special employer's work. *Id.* at 181, 149 S.E. at 481.

To determine whether a party is a special employer, we examine four elements of the master-servant relationship: (1) selection and hiring of the servant; (2) payment of his or her wages; (3) power of dismissal; and (4) power of control of the servant's actions. *Smith v. Grenadier*, 203 Va. 740, 746, 127 S.E.2d 107, 111 (1962). The most significant factor is the extent of control over the employee. *Id.*; *Coker v. Gunter*, 191 Va. 747, 750, 63 S.E.2d 15, 16 (1951). Control is important in determining the special employer relationship because it imposes liability upon the employer who was most directly responsible for the employee's actions at the time of the injury. The theory is that as between two employers, the one who controls the employee's actions and whose work the employee is performing should be responsible for providing compensation for the employee's injuries.

In this case, Frye selected and hired Mannon, paid him, deducted taxes and social security, and had the sole power to dismiss him. Frye controlled when and where to send Mannon to do masonry work. Insofar as the day-to-day work was concerned, the commission found that VPI exclusively and completely controlled Mannon's employment to the extent that Frye was prohibited from coming on campus to supervise his employees. How Mannon performed on site work was directed by VPI. These findings are based on credible evidence and will not be disturbed on appeal. *Dublin Garment Co. v. Jones*, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986). Therefore, we hold that Mannon was a loaned employee and that VPI was his special employer.

VPI argues, however, that even if it was Mannon's special employer, Frye, as a broker of labor services who agreed to and did secure workers' compensation insurance, is liable for the workers' compensation claims of its employees. VPI relies upon *Wright v. Kelly Labor*, 57 O.I.C. 401 (1976), in which the Industrial Commission held that an employer in the sole business of providing temporary labor who agreed with its customers that it would be the employer for workers' compensation purposes was liable for benefits to an employee injured while working for one of the company's customers. *But see Rogers v. Vanguard Constr. Co.*, 56

O.I.C. 272 (1974) (where no evidence of agreement to provide compensation insurance and where immediate employer not solely a labor broker, control test imposes liability on special employer). Frye responds that it contracted to carry workers' compensation only to protect *itself*, not VPI, from claims. Further, Frye argues that Mannon was not engaged in the masonry work specified in the contract between VPI and Frye but was doing carpentry and working outside the contract. He had, by his own agreement with VPI, taken himself out of the Frye contract.

A number of states, by either judicial decision or statute, have adopted rules to govern the labor broker situation. Particularly when the labor broker agrees to provide workers' compensation coverage, they have held that the labor broker is the liable employer. *See Bilotta v. Labor Pool of St. Paul, Inc.*, 321 N.W.2d 888 (Minn. 1982); *White v. Extra Labor Power of America*, 54 Mich. App. 370, 221 N.W.2d 214 (1974); *Ettlinger v. State Ins. Fund*, 12 A.D.2d 568, 206 N.Y.S.2d 739 (1960); *Ishmael v. Henderson*, 286 P.2d 265 (Okla. 1955). This result imposes the cost for the industrial accident on the party who assumed the risk and has taken into account the potential for loss; this approach allows the loss to follow the premium.

Most of those states, however, provide by statute that liability is joint and several between dual employers, or is apportioned between them, *see, e.g.*, Minn. Stat. § 176.071 (1980), or that liability is derivative as in the statutory employer provisions, Ill. Rev. Stat. Ch. 48 § 138.1(a)(4) (Smith-Hurd 1969). Other states' statutes provide that joint employers may contract as to who will bear the workers' compensation liability. *See, e.g.*, Ind. Code § 22-3-3-31. In contrast, our Workers' Compensation Act does not provide for shared liability and our case law clearly places responsibility on the special employer. *See Ideal Steam Laundry*, 153 Va. at 181-82, 149 S.E. at 481. Further, Code § 65.1-37 provides that "[n]o contract or agreement, written or implied . . . shall in any manner operate to relieve any employer in whole or in part of any obligation created by this Act, except as herein otherwise expressly provided." While the legislature has provided the statutory right of indemnity in some situations, such as the statutory employer context, Code §§ 65.1-29 to 65.1-33, it has not done so in the loaned employee situation. Consequently, we hold that our Act contains no "labor broker exception" and we decline to create one.

Although the labor broker exception offers a logical approach that imposes liability on the party who assumed the risk, that salutary result can also be accomplished under Virginia's compensation scheme by a contract or indemnity agreement between the employers. Although the Act prohibits an employer from contracting away his or her liability under the Act, Code § 65.1-37, nothing in the Act precludes one employer from agreeing to procure insurance to protect or to indemnify the other. *Bieger v. Consolidation Coal Co.*, 650 F. Supp. 1294, 1296 (W.D. Va. 1987). Employers may agree between themselves which will bear ultimate responsibility for designated losses. Also, in contracting for temporary services, an employer may contract for workers' compensation to cover those services. The remedy for the failure to abide by such an agreement, however, is a civil action on the contract. Our Act is designed to define clearly and readily which employer has initial liability to pay compensation to an injured employee without delaying compensation benefits pending an adjudication of responsibility between employers, owners, contractors and subcontractors. Absent some statutory provision, neither the agreement between the parties nor the status of one employer as a labor broker controls workers' compensation liability in a fashion other than as dictated by the Code.

> The purpose and effect of the Workers' Compensation Act (Act) are to control and regulate the relations *between the employer and the employee*. While the Industrial Commission has jurisdiction "to do full and complete justice in each case," . . . its jurisdiction does not extend to the litigation and resolution of issues between two insurance carriers which do not affect an award of the Commission. Generally, the Commission's jurisdiction is limited to those issues which are directly or necessarily related to the right of an employee to compensation for a work-related injury.

*Hartford Fire Ins. Co. v. Tucker*, 3 Va. App. 116, 120, 348 S.E.2d 416, 418 (1986) (citations omitted). This limitation applies equally when the dispute is between employers regarding a contract that is tangential to the employee's claim. In this case, it is disputed whether the parties intended that Frye's insurance would cover any accidental, work-related injury his temporary employees suffered. Also disputed is the effect on the contract of Mannon working at a non-masonry job. These disputes are tangential in

the sense that both employers concede the compensability of the claim. Their dispute concerns which of them is ultimately liable under their contract, not which is liable under the Act. Thus, construction of the contract in this case is not within the jurisdiction of the Industrial Commission. We do not find it inequitable to require the special employer to compensate the employee even when the general employer may have agreed to do so. The employee, for whose benefit the Act was created, should not have to await the resolution of a contract dispute between employers to receive benefits for a clearly compensable injury. The legislature has made such a policy clear by providing that an employer's own insurer cannot reasonably and in good faith raise such a contract defense to avoid paying the employee benefits. See Code § 65.1-111. Likewise, the policy of protecting the employee from contract disputes between employers is further demonstrated by the provision in the Act that the statutory employer is liable with a right to reimbursement from the immediate employer. Code §§ 65.1-29 to 33. That same interest in the expeditious payment of plainly compensable claims is protected by this clear rule of special employer liability that may obviate the need for a workers' compensation hearing except in those situations where there exists a reasonable dispute whether the special employer relationship exists. Contract or indemnity actions concerning ultimate liability may then be resolved in civil courts. Additionally, one who is deemed a special employer under the Act is also protected by the Act from a potentially greater liability in a tort claim. Because the workers' compensation claim is the exclusive remedy against the special employer, the special employer benefits from the Act.

■ Having found that VPI was Mannon's special employer, and thus that it was liable insofar as the claimants were concerned, we turn to the issue of attorneys' fees. The commission held that the claim was "defended without reasonable grounds inasmuch as the fatal injury by industrial accident was clearly established as was the status of Mannon's dependents." It consequently awarded attorneys' fees of $11,500 plus costs to Mrs. Mannon to be paid by VPI. The statutory authority for such an award provides that when the commission or a court determines that proceedings have been "brought, prosecuted, or defended without reasonable grounds" by an employer it may assess against the employer the costs including a reasonable attorneys' fees. Code § 65.1-101. The award of attorneys' fees is left to the discre-

tion of the commission and will not be disturbed unless that discretion has been abused. *Volvo White Truck Corp. v. Hedge*, 1 Va. App. 195, 200-01, 336 S.E.2d 903, 906 (1985).

In deciding that VPI's grounds of defense were unreasonable, the deputy commissioner pointed out that from the existing law and the facts known to VPI, it should have had no difficulty ascertaining where liability for Mr. Mannon's death lay. We cannot agree with the commission that liability was so clear in this case. In light of the commission's own decision in *Wright*, VPI had a tenable argument that Frye was primarily liable as a labor broker who agreed to carry compensation insurance. Further, when the question presented is one that has not been decided by an appellate court and is one about which "there may have been a reasonable and an honest difference of opinion," the question is not unreasonable grounds on which to make a defense. *Honaker & Feeney v. Hartley*, 140 Va. 1, 15, 124 S.E. 220, 224 (1924). Until this decision, we cannot say it was clear under existing laws what effect the agreement between employers to provide workers' compensation insurance had upon the question of either employer's liability. We hold that in light of the undecided question and the commission's decision in *Wright*, VPI was not unreasonable in contending that Frye had agreed to provide insurance and was liable under the Act. We note also that an element of the claimants' prima facie case is proof of the employment relationship. While the Act does require employers and insurers to meet their obligations promptly and with diligence, it does not require that they concede an employment relationship imposing liability where one arguably may not exist. We therefore reverse the award of attorney's fees.

*Affirmed in part, reversed in part.*

Duff, J., and Hodges, J., concurred.