COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


MARSHALL ERDMAN AND ASSOCIATES, INC. AND
 LIBERTY MUTUAL FIRE INSURANCE COMPANY

v.   Record No. 2549-96-2

EDWIN L. LOEHR,
 GREGORY L. URSO (DECEASED) AND
 UNINSURED EMPLOYER'S FUND                    OPINION BY
                                    CHIEF JUDGE NORMAN K. MOON
EDWIN L. LOEHR                          MAY 13, 1997

v.   Record No. 2586-96-2

MARSHALL ERDMAN AND ASSOCIATES, INC.,
 LIBERTY MUTUAL FIRE INSURANCE COMPANY,
 GREGORY L. URSO (DECEASED) AND
 UNINSURED EMPLOYER'S FUND


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Roger L. Williams (Vasiliki Moudilos;
        Williams & Lynch, on briefs), for Marshall
        Erdman and Associates, Inc. and Liberty
        Mutual Fire Insurance Company.

        Andrew J. Reinhardt (Kerns, Kastenbaum &
        Reinhardt, on briefs), for Edwin L. Loehr.

        Christopher D. Eib, Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General; Richard L. Walton, Jr., Senior
        Assistant Attorney General; John J. Beall,
        Jr., Senior Assistant Attorney General, on
        briefs), for Uninsured Employer's Fund.

        No brief or argument for Gregory L. Urso
        (Deceased).



      Marshall Erdman and Associates, Inc. and Liberty Mutual Fire

Insurance Company appeal the decision of the Workers'

Compensation Commission finding that injuries sustained by Edwin

L. Loehr arose out of and in the course of his employment with Marshall Erdman. Marshall Erdman contends that Loehr was an employee of Gregory L. Urso at the time of his injuries and that accordingly, the commission erred in holding it liable for Loehr's claims.

Loehr asserts that the commission properly determined that he was an employee of Marshall Erdman at the time of his injuries, but alternatively if he is found to have been an employee of Urso, an uninsured employer, he is entitled to be compensated by the Uninsured Employer's Fund. In Loehr's separate appeal, he asserts that the commission erred in suspending his temporary total disability benefits as of November 23, 1995.

Holding that the evidence supports the finding that Loehr reasonably relied upon Urso's apparent authority as a Marshall Erdman supervisor, we affirm the commission's finding that Loehr's injuries arose out of and during the course of his employment with Marshall Erdman. We further hold that the commission's finding that Loehr was not entitled to disability benefits after November 23, 1995 was supported by credible evidence and, therefore, is affirmed.

In March, 1993, Loehr was hired by Marshall Erdman to work as a carpenter on a medical park construction job at Stony Point Shopping Center in Richmond, Virginia. Loehr was interviewed and hired by Urso, a Marshall Erdman employee and the supervisor of

the Stony Point construction project.  On two separate occasions, Loehr was sent by Urso to another construction project in Williamsburg, Virginia, where a residence was being constructed.  At the Williamsburg site, Loehr worked with several other employees who also worked on the Stony Point project, including Larry Francis.  Francis was the supervisor of the Williamsburg project and also served as a foreman on the Stony Point project.  Although there were no Marshall Erdman construction signs at the Williamsburg site, all materials and tools were provided by Marshall Erdman.  In addition, Loehr was paid for his work on the Williamsburg and Stony Point projects in a single check issued by Marshall Erdman.

On July 12, 1993, the first occasion that Loehr worked at the Williamsburg site, he slipped and fell a distance of six feet.  He experienced sharp pain throughout his upper body.  Loehr reported the accident to his supervisor, Francis, and also discussed the accident with Urso the day after the fall.  Urso instructed the Marshall Erdman secretary located at the Stony Point project to file the proper paperwork concerning the accident and advised Loehr of his actions.

Subsequently, Loehr received medical treatment from Dr. Zelouf for a herniated disk.  Dr. Zelouf placed Loehr on restricted duty on March 14, 1995, prohibiting Loehr from lifting more than forty pounds while working.  Loehr's regular job activities involved repeatedly lifting between one hundred and

one hundred twenty-five pounds during the course of each day.

On Loehr's second trip to the Williamsburg site on August 9, 1993, he was again injured when an air gun he was using double shot, driving a nail through his finger. Loehr informed Francis and Urso of the injury the following day. Loehr was preparing to file a claim when Urso informed him that Urso would have to pay his medical bills because the Williamsburg construction project was in fact Urso's private residence and was not a project of Marshall Erdman.

Marshall Erdman became aware of the Williamsburg project in February, 1994, when an investigation by Marshall Erdman of cost overruns at the Stony Point project revealed that there were approximately eighteen thousand unaccounted man-hours on the Stony Point project. Marshall Erdman determined that while supervising the Stony Point project, Urso engaged in an unauthorized "side project" involving the construction of his private residence in Williamsburg. Urso had three to four workers from the Stony Point project working on his home in Williamsburg on a regular basis. Urso also used Marshall Erdman tools and building materials and included employee hours spent constructing his home in the work hours he submitted for payment by Marshall Erdman for work done on the Stony Point project.

Loehr ultimately filed claims for both injuries with Marshall Erdman. Marshall Erdman refused to pay Loehr's medical claims, asserting that he was not in their employ at the time of

his respective injuries.  On March 29, 1996, a deputy commissioner of the Workers' Compensation Commission found Loehr's claims to be compensable and held Marshall Erdman liable.  The deputy commissioner's award included benefit amounts for various periods following the accident, including disability benefits in a weekly amount of $346.67 beginning November 23, 1995.  By opinion dated September 23, 1996 the full commission affirmed the deputy commissioner's finding that Loehr's injuries arose out of and in the course of his employment with Marshall Erdman.  However, the commission found that Loehr was "not entitled to temporary total disability benefits during periods where there [was] no supporting medical evidence or sufficient proof of marketing."  Accordingly, the commission reversed the deputy commissioner's award of temporary total disability benefits for the period beginning November 23, 1995.

Employment Status

Marshall Erdman admits that Loehr was its employee during the time he worked on the Stony Point project.  However, Marshall Erdman asserts that Loehr was not its employee on either of the two days that he worked for Urso.  Instead, it argues that Urso became Loehr's employer and as such, under the Virginia Supreme Court's ruling in Ideal Steam Laundry v. Williams, 153 Va. 176, 149 S.E. 479 (1929), Urso should be held responsible for Loehr's injuries.  We disagree and find that Urso's misuse of Marshall Erdman employees did not constitute a loaned-employee arrangement

and in accord with the law of agency, hold Marshall Erdman liable for Loehr's compensable injuries.

In Ideal Steam Laundry, the claimant was employed by J. T. Eanes trading as Ideal Steam Laundry, a laundry where the claimant was required to work four days a week. Id. Eanes also employed the claimant at his personal residence one day a week, where the claimant performed a variety of yard and farm work. Id. While building a grape arbor at Eanes' home, claimant was injured. The Virginia Supreme Court held that

> "A servant may be transferred from his service for one master--who may have made the express contract for employment of the servant and may pay the latter his wages and be his general master--to the service of another person other than his general master; in which case . . . (2) the special servant must look to the special master for his indemnity, if he is injured, while the stipulated work is in progress, by dangerous conditions resulting from the special master's failure to fulfill one of those duties which the law imposes upon the master for the benefit and protection of their servants."

Id. at 180-81, 149 S.E. at 481 (citation omitted). Marshall Erdman argues that under this holding, it cannot be held liable for Loehr's claims because Loehr was a "loaned-employee."[1]

---

[1] At the hearing before the deputy commissioner, counsel for Marshall Erdman appeared to agree with counsel for Loehr and the deputy commissioner that Marshall Erdman's theory was that Loehr became a loaned-employee of Urso. However, on brief, Marshall Erdman initially asserted that "[t]he deputy commissioner incorrectly relied on the cases concerning loaned employees" and argued that Loehr could not be a loaned-employee because to be a loaned-employee Marshall Erdman would have had to have consented to loaning Loehr to Urso. Nevertheless, later in its brief, Marshall Erdman argues that under the Virginia Supreme Court's

For an employee to be a loaned-employee, the borrowing employer must (1) acquire the right to control and direct the employee, and (2) the employee must indicate, whether expressly or impliedly, consent to becoming the employee of the borrowing employer. See id. at 180, 149 S.E. at 481. Here, as Marshall Erdman admits, Urso never obtained the right to use Marshall Erdman employees for work on anything other than the Stony Point project. Further, the record does not support the conclusion that Loehr either explicitly or impliedly consented to becoming Urso's individual employee.

Urso's failure to obtain permission to use or hire Marshall Erdman employees to construct his private residence and Loehr's lack of explicit or implied consent to working for an employer other than Marshall Erdman, distinguish this case from Ideal Steam Laundry. Therein, the employer and borrowing employer were the same individual, obviating the need to prove that permission was granted for the loan of the claimant. The claimant, unlike Loehr, impliedly agreed to work for a different employer as the nature of the work was not in the "usual course of the trade, business, occupation or profession of the [loaning] employer." Id. at 179, 149 S.E. at 481. While working at the laundry, the claimant performed janitorial duties, but performed yard work and garden/farm work at the laundry owner's home. Id. The obvious

ruling in Ideal Steam Laundry, a loaned-employee can only look to the special master for compensation and therefore, that Loehr should be limited to seeking indemnification from Urso.

- 7 -

difference in the nature of the work evidences the claimant's understanding that he was performing in two different employment capacities.

Unlike the situation in Ideal Steam Laundry, here the record establishes that Loehr, relying on the apparent authority of Urso, believed that the work he performed in Williamsburg was for Marshall Erdman. The law of agency provides that "when an agent, acting within the scope of his apparent agency, enters into a contract with a third person `the principal becomes immediately a contracting party, with both rights and liabilities to the third person.'" Equitable Variable Life Ins. v. Wood, 234 Va. 535, 539, 362 S.E.2d 741, 744 (1987) (quoting Restatement (Second) of Agency § 8 comment d (1957)). Accordingly, Marshall Erdman may be held liable for Loehr's injuries if Urso acted within the scope of his apparent authority. "An act is within the apparent scope of an agent's authority if, in view of the character of his actual and known duties, an ordinarily prudent person, having a reasonable knowledge of the usages of the business in which the agent is engaged, would be justified in believing that he is authorized to perform the act in question." Wright v. Shortbridge, 194 Va. 346, 353, 73 S.E.2d 360, 364-65 (1952) (citations omitted).

Marshall Erdman asserts that "[i]t is incredible to believe that [Loehr], hired to build a medical office building in Richmond, would . . . think that his employment would include

- 8 -

work performed on a personal residence in Williamsburg." However, the record is devoid of evidence suggesting that Loehr was ever made aware of the fact that he was not in Marshall Erdman's employ while working on both construction jobs. Further, the record contains substantial evidence supporting the findings of both the deputy commissioner and full commission, which will be upheld on appeal if supported by credible evidence, James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989), that Loehr believed he was a Marshall Erdman employee at all times.

The record does not reflect that Loehr was told at the time of his hiring that his work would be limited to the Stony Point project. Urso hired Loehr to work as a carpenter, and he was employed in that capacity at both job sites. There is no evidence to suggest that Loehr was aware of the fact that Marshall Erdman only constructs medical offices and facilities. The record does establish that work materials and tools at the Williamsburg site belonged to Marshall Erdman. Other Marshall Erdman employees from the Stony Point project were also working at the Williamsburg site, and the Williamsburg supervisor was also a foreman on the Stony Point project. Loehr was compensated for all the construction work he performed in a single check issued by Marshall Erdman. The evidence also establishes that Loehr was told by Urso that a claim would be filed with Marshall Erdman after his first accident at the Williamsburg site. Not

until _after_ his second accident was Loehr informed that the Williamsburg job was not a Marshall Erdman project.

The evidence is sufficient to support the finding that an ordinarily prudent person in Loehr's position could have believed, as Loehr did, that Urso had the authority as a Marshall Erdman supervisor to hire and supervise work crews on both the Stony Point and Williamsburg construction projects. Accordingly, we affirm the commission's ruling that Marshall Erdman compensate Loehr for injuries arising out of and in the course of his employment with Marshall Erdman.

### Suspension of Temporary Total Disability Benefits

As previously noted, findings of fact of the Workers' Compensation Commission are conclusive on appeal, provided they are supported by credible evidence. James, 8 Va. App. at 515, 382 S.E.2d at 488. Further, the evidence is to be construed in the light most favorable to the party prevailing before the commission. Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 339 S.E.2d 916 (1986).

The commission determined that the evidence did not support a finding of disability for the period beginning November 23, 1995. There is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time. Hercules, Inc. v. Carter, 14 Va. App. 866, 419 S.e.2d 438 (1992). To the contrary, a party seeking compensation bears the burden of proving his

– 10 –

disability and the periods of that disability.

Here, the latest medical record presented to the commission at the time of Loehr's hearing was a letter from Dr. Zelouf, Loehr's treating physician, dated March 27, 1995, some ten months prior to the hearing before the deputy commissioner and seventeen months prior to the hearing before the full commission. In the letter, Dr. Zelouf indicated that he had previously placed Loehr on light duty, restricting his lifting to forty pounds or less. However, Dr. Zelouf also indicated that, "[c]ertainly as [Loehr] improved, I would progress him to full duties." The letter did not indicate the last occasion upon which Loehr had been treated, how long the partial disability was expected to continue, or when, if ever, Loehr would receive additional medical evaluation.

Given the absence of proof of continuing disability and the evidence that Loehr would eventually be returned to full duties, the commission had credible evidence upon which to find that Loehr was not entitled to disability benefits after November 23, 1995. Consequently, we need not reach the question of whether the commission erred in determining that Loehr failed to adequately market his remaining work capacity.[2]

We affirm the commission's decision awarding Loehr disability benefits until November 23, 1995.

Affirmed.

---

[2] The parties stipulated that this defense was not being advanced.