COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


JENNIFER R. SMITH

OPINION BY

v.        Record No. 1797-05-4         JUDGE JAMES W. BENTON, JR.
                                       MAY 16, 2006

McMILLAN PERSONNEL SERVICE, INC.,
  GRANITE STATE INSURANCE COMPANY,
  PITTMAN'S TREE & LANDSCAPING, INC.,
  AMERICAN INTERSTATE INSURANCE CO.,
  RYAN'S HOPE, LTD. d/b/a AT WORK PERSONNEL AND
  RELIANCE INSURANCE COMPANY/VIRGINIA
  PROPERTY AND CASUALTY INSURANCE
  GUARANTY ASSOCIATION.


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Jerry O. Talton for appellant.

               Monica Taylor Monday (Gentry Locke Rakes & Moore, on
               brief), for appellees McMillan Personnel Services, Inc., and
               Granite State Insurance Company.

               Michael L. Zimmerman (Siciliano, Ellis, Dyer & Boccarosse,
               PLC, on brief), for appellees Pittman's Tree & Landscaping, Inc.
               and American Interstate Insurance Co.

               No brief or argument for appellees Ryan's Hope, Ltd. d/b/a At Work
               Personnel and Reliance Insurance Company/Virginia Property and
               Casualty Insurance Guaranty Association.


     The Workers' Compensation Commission found that Jennifer R. Smith suffered an injury

by accident while she was a special employee of Pittman's Tree & Landscaping, Inc., but her

claim was barred by the statute of limitations.  Smith contends the commission erred in ruling

that McMillan Personnel Services, Inc., a labor broker that employed her and assigned her to

work for Pittman, did not admit liability in its response to request for admissions and was not

liable to pay compensation. Alternatively, Smith argues that the commission erred in ruling that neither McMillan nor Pittman had misled her and that equitable principles did not require payment of compensation to her. For the reasons that follow, we reverse the commission's decision that Smith was Pittman's special employee.

I.

McMillan, a labor broker firm, provided laborers to Pittman under a written agreement.[1] For each laborer McMillan provided, Pittman agreed to pay to McMillan an hourly rate, in excess of the hourly wage actually received by each laborer. McMillan paid the laborer's wages. McMillan or its franchiser, At Work Personnel Services, also paid the "associated taxes, Worker's Compensation, FICA, FUDA, SUDA, and all associated expenses" connected with

---

[1] Code § 65.2-803.1, which was enacted July 1, 2000 and amended in 2002, requires "professional employer organizations" to register with the commission. In addition to other obligations, the statute contains the following provisions:

> C. All agreements for professional employer services shall be in writing and shall provide a description of the respective rights and obligations of the professional employer organization and the client company. The professional employer organization shall provide a written summary of such rights and obligations to each coemployee, including information concerning filing for workers' compensation and unemployment benefits. No agreement for professional employer services shall alter or affect the terms and conditions of any collective bargaining agreement between the client company and its employees without the consent of the parties to such collective bargaining agreement.

> D. A professional employer organization that is registered with the Commission and operating in compliance with the requirements of this section shall be deemed to be an employer of its coemployees and may assume responsibilities as an employer of its coemployees for the term of its agreement with a client company. A professional employer organization may secure and provide all required voluntary market workers' compensation insurance for its coemployees under a master workers' compensation insurance policy in the name of the professional employer organization.

Id. This statute was not in effect when Smith was injured.

- 2 -

each laborer from this excess. Under this agreement, McMillan agreed to maintain workers' compensation coverage for the laborers. According to the testimony of McMillan's agent, Frank McMillan, Pittman agreed it could not hire as its employee any laborers provided by McMillan during the laborer's first ninety days with Pittman. He also testified that Pittman had "sole discretion whether or not that [laborer] is to remain at that assignment," but McMillan retained the power to fire any laborer assigned to Pittman.

Smith applied to McMillan for employment in April 2000. McMillan accepted Smith's application and required her to sign a work agreement, which stated "[e]mployee understands and agrees that he/she is employed by At Work [McMillan's franchiser], and is not an employee of any client of the company." After a period of training, McMillan assigned her to work for Pittman as a flagger to stop traffic while Pittman employees trimmed trees. When Smith went to the job site on April 10, 2000, Pittman's employee assigned her, instead, to collect brush and put it in a wood chipper. Within a few hours of beginning this work, Smith suffered an injury.

Two months after the accident, McMillan filed with the commission a first report of accident identifying McMillan as the employer. A month later, McMillan's insurer notified Smith that her "claim does not meet the requirements of a compensable injury . . . as defined by the . . . Act."

On April 8, 2002, Smith filed a claim for medical benefits and temporary total disability benefits against McMillan, alleging that on April 10, 2000, she injured her pelvis, right ankle, and left clavicle when a falling tree hit her. On January 8, 2003, approximately nine months after the statute of limitations ran, Smith wrote to the commission requesting that Pittman be made a party to her application for benefits.

At the conclusion of the evidentiary hearing, the deputy commissioner found that Smith was a special employee of Pittman when she was injured. The deputy commissioner ruled,

however, that her claim against Pittman was barred by the statute of limitations and that "there was insufficient evidence to invoke equitable powers against either McMillan . . . or Pittman."

Upon review, the commission rejected Smith's claim she had not assented to be Pittman's employee and found that Pittman controlled Smith's employment when she was injured. Thus, the commission ruled that "[w]hile McMillan was [Smith's] direct employer on the date of her accident, Pittman was [her] special employer at the time of her injury." The commission ruled that McMillan's admission that Smith was their employee on the date of her injury was not inconsistent with the commission's holding. The commission also ruled that Smith's claim against Pittman was barred by the statute of limitations and that the equitable principles of estoppel, constructive fraud, imposition, and misrepresentation do not allow Smith to recover from Pittman. One commissioner dissented, noting that no evidence proved that Smith acquiesced or consented to being Pittman's employee.

## II.

"The Workers' Compensation Act does not mention special employers or loaned employees." Virginia Polytechnic & State Univ. v. Frye, 6 Va. App. 589, 592, 371 S.E.2d 34, 36 (1988). In cases arising under the Act, however, Virginia follows the "'well established principle of the common law which holds that an employee who is lent to a special employer as distinguished from his general employer, and who assents to the change of employment, becomes the servant of the employer to whom he is lent . . . .'" Ideal Steam Laundry v. Williams, 153 Va. 176, 181-82, 149 S.E. 479, 481 (1929) (citation omitted). This principle is "used to determine which of two employers is liable for compensation benefits to an injured employee." Frye, 6 Va. App. at 592, 371 S.E.2d at 36.

In making this determination of liability, the power of control is "the most significant" factor, <u>Coker v. Gunter</u>, 191 Va. 747, 753, 63 S.E.2d 15, 17 (1951), but may not be dispositive. <u>Metro Machine Corp. v. Mizenko</u>, 244 Va. 78, 83, 419 S.E.2d 632, 635 (1992).

> Factors generally accepted as appropriate considerations . . . include: (1) who has control over the employee and the work he is performing; (2) whether the work performed is that of the borrowing employer; (3) was there an agreement between the original employer and the borrowing employer; (4) did the employee acquiesce in the new work situation; (5) did the original employer terminate its relationship with the employee; (6) who is responsible for furnishing the work place, work tools and working conditions; (7) the length of the employment and whether it implied acquiescence by the employee; (8) who had the right to discharge the employee; and (9) who was required to pay the employee.

<u>Id.</u> (citations omitted).

III.

Smith contends McMillan's admission that Smith suffered an injury by accident that arose out of and in the course of her employment with McMillan establishes as a matter of law a compensable claim against McMillan. McMillan responds that "the commission correctly found [that] the issue whether Pittman's was Smith's special employer on the date in question was not resolved by McMillan's admissions."

The commission has adopted discovery rules pursuant to authority granted by Code § 65.2-703. In pertinent part, the commission's Rule 1.8(I) is as follows:

> Request for Admission. – After a claim or application has been filed, a party may serve upon any other party a written request for the admission of the truth of any material matter.
>
> *     *     *     *     *     *     *
>
> An admission under this rule may be used only for providing evidence in the proceeding for which the request was made and shall not have force or effect with respect to any other claim or proceeding. An admission or denial must be offered in evidence to be made part of the record. A party is required to respond within

- 5 -

30 days or be subject to compliance under Rule 1.8(K) or sanctions under Rule 1.12.

During the course of these proceedings and prior to the evidentiary hearing before the deputy commissioner, McMillan responded to Smith's requests for admissions as follows:

1. That on April 10, 2000, Jennifer Smith was an employee of McMillan Personnel Services, Inc.

RESPONSE:  Admitted.

\*    \*    \*    \*    \*    \*    \*

15. That Jennifer Smith suffered an injury by accident arising out of her employment with McMillan Personnel Services, Inc., on or about April 10, 2000.

RESPONSE:  Admitted.

16. That Jennifer Smith suffered an injury by accident arising in the course of her employment with McMillan Personnel Services, Inc., on or about April 10, 2000.

RESPONSE:  Admitted.

Smith offered these admissions in evidence at the evidentiary hearing and made them part of the record.  The commission, however, rejected Smith's argument that McMillan's admissions were dispositive of the issue before it.  The commission ruled that "[t]he question . . . is who was [Smith's] employer at the time of the injury" (emphasis in the original), and it explained that "while McMillan . . . was [Smith's] direct employer on the date of her accident, Pittman was [Smith's] special employer at the time of the injury."

Under compensation laws, it is generally understood that "the lending employer is known as the 'general employer' and the borrowing employer, the 'special employer.'"  3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 67.01[1], p. 67-2 (2001); see Frye, 6 Va. App. at 592, 371 S.E.2d at 36 (noting that "[t]he 'special employer' rule is a test used to determine which of two employers is liable for compensation benefits to an injured employee").

- 6 -

As the Supreme Court observed in <u>Ideal Laundry</u>, 153 Va. at 179, 149 S.E. at 480, "[t]he Virginia compensation act . . . is silent with reference to the status of a loaned employee, and it becomes necessary to ascertain the rights of the employee against his general and special employers."

We do not agree with the commission's ruling that the request for admission and the actual admission by McMillan did not address the "question . . . who was [Smith's] employer <u>at the time of the injury</u>." (emphasis in commission's opinion). That is precisely the effect of the three admissions. Nevertheless, we believe the commission apparently determined, upon consideration of the entire record, that the admissions should be understood only to resolve the question of the commission's jurisdiction, but not the existence of loaned or special employment.

> The Virginia Workers' Compensation Act applies to injuries by accident "arising out of and in the course of" an individual's employment. When an employee sustains such an injury, the Act provides the sole and exclusive remedy available against the employer. To the extent that an employee's injury does not come within the ambit of the Act, the employee's common-law remedies against his employer are preserved unimpaired. An injury comes within the ambit of the Act only if the injury satisfies both the "arising out of" and the "in the course of" prongs of the statutory requirements of compensability.

<u>Butler v. Southern States Cooperative, Inc.</u>, 270 Va. 459, 465, 620 S.E.2d 768, 772 (2005) (citations omitted).

We conclude that, upon consideration of the entire record, the commission could properly deem McMillan's admission to be a concession that Smith's injury was compensable under the Act, but not a concession that McMillan, as Smith's general employer, was the employer liable under the Act. We are constrained to reach this conclusion because the commission certainly was aware that McMillan's answers to interrogatories, filed on the same day as its admissions, put at issue its liability. In one answer, McMillan responded:

- 7 -

> Pittman Tree exerted complete control over the claimant's job duties and provided equipment as such, Pittman Tree was the claimant statutory employer with in the meaning of the Act. McMillan Personnel was not the technical employer of the claimant for the purposes of the Virginia Workers' Compensation Act. At the time of her injury by accident the claimant was under the control and dominion of Pittman Tree.

We hold, therefore, that the commission did not err in ruling that McMillan's "admission was not inconsistent" with its determination that the issue before the commission was whether McMillan, the general employer, had loaned Smith to a special employer at the time of her injury by accident.

IV.

Smith further argues that she did not assent to a change in her employment and that McMillan's admission was further evidence of "its conduct in locking [Smith] by agreement into an assumption that it and not its clients were her employer." McMillan responds that the commission could reasonably infer Smith's assent from her conduct.

In Ideal Laundry, the Supreme Court relied upon "both . . . the common law rule as to a loaned employee and the statutory definition of an employee" when determining whether the claimant was an employee of the special employer when the claimant suffered an injury. 153 Va. at 182, 149 S.E. at 482. Under the common law rule, "an employee who is lent to a special employer . . . becomes the servant of the employer to whom he is lent" only if the employee "'assents to the change in employment.'" Id. at 181-82, 149 S.E. at 481 (citation omitted). Similar to the common law rule, "[t]he necessity for the employee's consent to the new employment relation stems, of course, from the statutory requirement of 'contract of hire' . . . ." Larson's, supra § 67.02[3], p. 67-5. See Code § 65.2-101 (defining in a material way the term "[e]mployee" to include "[e]very person . . . in the service of another under any contract of hire"). The "contract for hire in the lent employee situation" is necessary because an "employee

- 8 -

loses certain rights along with those gained by striking up a new employment relation." Larson's, supra § 67.02[2], p. 67-5.

The employee's assent may be shown by "explicit or implied consent to working for an employer other than [the general employer]." Marshall Erdman and Assoc. v. Loehr, 24 Va. App. 670, 677, 485 S.E.2d 145, 148 (1997). The employee's "belie[f] that the work he performed . . . was for [his general employer]" is a factor to be considered. Id. at 677-78, 485 S.E.2d at 149. For example, in Loehr, we affirmed the commission's finding that Loehr was not a loaned employee and we held that "the record is devoid of evidence suggesting that Loehr was ever made aware of the fact that he was not in [his general employer's] employ while working . . . ." Id. at 678, 485 S.E.2d at 149.

In this case, Smith had an objective basis to believe McMillan remained her employer at all times. The evidence established that McMillan required all its employees to sign a work agreement document. That document expressly provided that "[e]mployee understands and agrees that he/she is employed by At Work [McMillan's franchiser], and is not an employee of any client of the company." Whatever other purpose this document may have been intended to serve, it clearly informed Smith that she was McMillan's employee and that she was not Pittman's employee. The document contained no exceptions to that statement of employment. Smith was required to sign the document to "attest that [she had] read and agree[d] to the work agreement as stated above." Smith acknowledged that she read and signed the form and that she believed she was not Pittman's employee. In view of the document's unambiguous terms, Smith's belief was objectively reasonable.

The record established no circumstance that suggests Smith believed otherwise. The record indicates that Smith received training at McMillan's office to be a "flagger" on the highways and the training was "certified by the Virginia Department of Transportation's

standards." After that training, one of McMillan's employees drove Smith to Pittman's so that she could watch a safety video, and McMillan's employee then returned Smith to McMillan's office. During that time, a fellow McMillan employee watched Smith's young son.

The evidence proved Smith was injured a few hours after she reported to Pittman. Smith's injury occurred the first day that she was employed by McMillan and only several hours after she reported to Pittman's job site. These facts indicate she had no opportunity to acquiesce in the work situation due to the brevity of her employment. Thus, the facts of this case demonstrate that Smith had no work experience basis to question which of the two employers she worked for or to doubt the efficacy of the document McMillan required her to sign denoting her as McMillan's employee.

McMillan contends that the work agreement Smith signed, acknowledging that she was McMillan's employee and not Pittman's employee, "is of no moment" because "no party could contract away its legal obligation under the Act" and because the agreement is not germane to the issue of Smith's employer. McMillan also contends that Smith's actual work for Pittman establishes her assent.

We find no merit to McMillan's suggestion that this work agreement has the effect of contracting away any party's legal obligation under the Act. McMillan points to our ruling in Frye, that "the Act prohibits an employer from contracting away [its] liability under the Act," 6 Va. App. at 595, 371 S.E.2d at 37, and to Code § 65.2-300(A), providing that "no contract or agreement . . . shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title." We acknowledge that Frye and this case both involved a "labor broker" and an agreement between the labor broker and another employer.[2] The significant fact

---

[2] Other cases have addressed in detail the significance of the contract between a labor broker and the other employer. For example, in Maynard v. Kenova Chemical Co., 626 F.2d 359 (4th Cir. 1980), Maynard sought to sue Kenova in a tort action for injuries he received after

in this case that differs from Frye is the existence of the agreement McMillan required Smith to sign giving her notice that she was employed solely by McMillan.

This work agreement was not a contract between McMillan and Pittman to avoid an obligation under the Act. Rather, it was the means by which McMillan communicated to Smith her employment status.[3] By requiring Smith to acknowledge she was McMillan's employee,

Manpower, a labor broker, sent him to work for Kenova. Although Maynard had received an award of workers' compensation benefits in West Virginia from Manpower, the trial court ruled that his tort action against Kenova was barred because Kenova was Maynard's special employer under the West Virginia Act. Id. at 360. Affirming that ruling on appeal, the court discussed the effect of a contract between the labor broker and the employer:

> In Kirby [v. Union Carbide Corporation, 373 F.2d 590 (4th Cir. 1967)], we relied on the contract and the circumstances existing between Du Pont and Union Carbide to find that there was no employer-employee relationship between Union Carbide and Kirby. The contract specifically provided that employees supplied by Du Pont to Union Carbide were to remain employees of Du Pont. In the present case, the only agreement between Manpower and Kenova was that contained in the work slip or "ticket" which Manpower gives to each worker assigned to a temporary job. The reverse side of the ticket contained the following: "The customer recognizes Manpower's employer-employee relationship with its personnel and accepts the obligation to discuss all matters concerning their employment, job assignments, pay procedures, etc., with Manpower." This language, in and of itself, fails to establish that there was not an employer-employee relationship between Kenova and Maynard. Lester [v. State Workmen's Compensation Commission, 242 S.E.2d 443 (W. Va. 1978)] prevents us from relying on other factors, such as an agreement between Manpower and Kenova regarding liability for injury to employees, in making our determination of whether there existed an employer-employee relationship. Therefore, nothing precludes the application of the loaned servant doctrine to find that Kenova was an employer of Maynard.

Maynard, 626 F.2d at 361. Unlike Smith's case, neither Kenova nor Frye contained evidence of a work agreement that the labor broker required the employee to sign.

[3] The agreement also notified Smith of other incidents of employment. For example, it informed her that the employment was "terminable at will" and that she "agree[d] to accept and comply with [McMillan's] rules and working conditions."

McMillan was not negating any obligation it had under the Act. To the contrary, it affirmed its status as Smith's employer. Moreover, as the record indicates, McMillan provided workers' compensation insurance for Smith, obligated itself to pay Smith as its employee, and barred its client from hiring Smith until a specified period had expired. Thus, the work agreement violated nothing in the letter or spirit of the Act.

As to the suggestion that the agreement had no bearing on whether Smith was Pittman's special employee, we note that both the common law and the Act require an employee's "assent[] to the change of employment." Ideal Laundry, 153 Va. at 182, 149 S.E. at 481. The work agreement contained an unambiguous expression that Smith was to remain at all times an employee of McMillan. Indeed, the work agreement left no doubt about its intent because it expressed in equally clear language that Smith was "not an employee of any client of the company." The record also indicates Smith was required to deliver to McMillan her timesheet for work. Smith's signature on the agreement and her testimony as to her understanding of the agreement remain uncontradicted. The fact that she worked at Pittman's site for mere hours before receiving her injury does not establish that she assented to Pittman replacing McMillan as her employer. As in Loehr, where the employee also performed the work at a site not controlled by the employer, this record did not establish that the "employee indicate[d], whether expressly or impliedly, consent to becoming the employee of the borrowing employer." 24 Va. App. at 677, 485 S.E.2d at 148.

Simply put, the facts of this case proved Smith had an objective basis upon which to believe that she was McMillan's, not Pittman's, employee. The record also proved she suffered an injury within hours of reporting to Pittman. These facts establish the absence of Smith's assent or consent to becoming Pittman's employee and negate Pittman's status as a special employer. We hold, therefore, that McMillan retained its status as Smith's sole employer and,

by its admission that Smith suffered an injury by accident that arose out of and in the course of her employment with McMillan, is liable for compensation benefits.

V.

We further hold that credible evidence in the record supports the commission's findings that equitable principles of estoppel, constructive fraud, imposition, and misrepresentation cannot be invoked by Smith to protect her from the bar of the statute of limitations for claims against Pittman. Pittman made no representations and engaged in no conduct that induced Smith to refrain from filing a claim.

VI.

For these reasons, we reverse the commission's denial of an award against McMillan for Smith's injuries by accident and we remand for entry of the appropriate award.

<u>Reversed and remanded.</u>