**Alexandria**

A. G. VAN METRE, JR., INC. AND FIREMAN'S FUND
INSURANCE CO.

v.

HENRY GANDY, et al.

No. 0698-87-4

Decided September 20, 1988

COUNSEL

Joseph C. Veith, III (Bromley, Brown & Walsh, on brief), for appellants.

Lawrence J. Pascal (Ashcraft & Gerel, on brief) for Henry Gandy, appellee.

Robert C. Baker, Jr. (Jeffrey P. Bloom, Friedlander, Misler, Friedlander, Sloan & Herz, on brief) for John Driggs Company, appellee.

Stephen W. Robinson (McGuire, Woods, Battle & Boothe, on brief) for Bob Banks Construction Co. and Commercial Union Insurance Companies, appellees.

OPINION

DUFF, J. — A. G. Van Metre Jr., Inc. (Van Metre) appeals the decision of the Industrial Commission finding it was the primary statutory employer of Henry Gandy under Code §§ 65.1-30 and 65.1-31, and denying it indemnity against the Uninsured Employers Fund, Code § 65.1-149. Van Metre raises various issues in its appeal that will be addressed, in seriatim, to the extent required. After considering the record, authorities cited and the arguments presented, we affirm the opinion of the Industrial Commission.

I.

The following facts contained in the record are relevant to these issues:

Henry Gandy was an equipment operator employed by B & D Excavating (B & D) a sole proprietorship operated by Bob Banks, Jr. B & D was engaged in the business of excavation and hauling. Van Metre is a corporation also engaged in the business of excavation and hauling, as is the John Driggs Company (Driggs).

Van Metre was under contract to supply vehicles and personnel to Driggs, which was working on the National Pension job site in Alexandria, Virginia. In order to supplement its own fleet of vehicles and personnel, Van Metre would often hire owner/operators or companies to assist in its work of excavation and hauling. B & D was on a list of such owner/operators maintained by Van Metre.

The record shows that before claimant's accident on January 16, 1984, B & D had, at Van Metre's request, supplied trucks for Driggs' work sites on December 9 and 15, 1983, and January 5 and 10, 1984. After being requested and directed to do so, the driver would proceed to the appropriate job site. Upon arrival, Driggs' personnel would check the B & D driver into the job site, direct his activities for the remainder of the day, and clock him out at the end of the work shift. B & D would then submit a bill on a weekly basis to Van Metre, who would pay it and rebill Driggs at a higher rate for the use of the vehicle and driver. Van Metre paid for the hired truck and driver only for the hours they were actually at the job site. Van Metre, in turn, was only paid by Driggs for the same time period. The time spent going to and

from the site was not billable.

The record contains credible evidence that on January 16, 1984, Van Metre had contracted with B & D for the use of a truck and driver on the Driggs' work site at the National Pension job. Henry Gandy drove the vehicle, a dump truck with a snow plow attachment on the front. The truck became disabled on Interstate 95, and in order to move it, the plow attachment had to be removed. While undertaking this task, the claimant was injured. He secured a favorable award against Van Metre from both the deputy commissioner and the full commission. This appeal followed.

## II.

Van Metre's first contention is that the evidence failed to establish that it was the statutory employer of Gandy within the meaning of Code §§ 65.1-30 and 31. Its argument with respect to §65.1-30 is that in order to be a "contractor" under the statute, the party involved must have contracted to perform work that was not a part of the regular trade, business or occupation of the party for whom the work was being performed. As Van Metre contracted with Driggs to perform hauling work, since hauling was admittedly a part of the trade business or occupation of Driggs, Van Metre could not be a "contractor" under § 65.1-30.

As to Code § 65.1-31, Van Metre disputes that it could be found liable for payment of compensation as a "subcontractor." It's argument proceeds thus: a "sub-contractor" is defined in Code § 65.1-30 as one engaged to perform work by a "contractor;" as there is no "contractor," pursuant to the argument above, VanMetre could not be liable as a sub-contractor. These arguments, while ingenious, are flawed. They fail to recognize the purpose behind the statutory employer statutes and the cases which have construed them.

To appreciate the statutory scheme, one must consider Code §§ 65.1-29, 30 and 31 together. Their purpose is to bring within the operation of the Workers' Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employee engaged in that work every such owner, contractor or subcontractor above such employee. *Sykes v. Stone & Webster Engi-*

*neering Corp.*, 186 Va. 116, 41 S.E.2d 469, 472 (1947). As was explained by the *Sykes* court:

It clearly appears to be the purpose of section 20(a) to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employee engaged in that work every such owner, or contractor, and sub-contractor, above such employee. But when the employee reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employee is not a part, then that employer is not liable to that employee for compensation under section 20(a). At that point paragraph 5 of section 12 intervenes and the employee's right of action at common law is preserved.

*Id.* at 122-23, 41 S.E.2d at 472.

Thus, as we view these statutes, it is immaterial that the record does not show the trade business or occupation of the person with whom Driggs contracted. If it did and the work was part of the business of Gandy's employer, the only effect would be to add another party responsible for paying compensation in the ascending scale. But this would in no way affect Van Metre's liability under Code §§ 65.1-30 and 31. The commission was faced with three companies, all engaged in the same trade, business and occupation. Driggs contracted with Van Metre to do a part of its work; Van Metre in turn contracted with B & D to do a portion of that work. Thus, Gandy had a right to look up the ascending scale for compensation payments, first from his immediate employer, B & D, then from Van Metre, and next from Driggs. We do not view the concept of "contractor" in Code § 65.1-30 as does Van Metre. When all three statutes are read together, it is clear that liability, as a statutory employer, is imposed on a subcontractor in Van Metre's position in this case. We hold that this was precisely the situation contemplated by the enactment of these statutes, and the commission was correct in finding Van Metre liable for compensation payments to Gandy in the same manner as if Gandy had been Van Metre's direct employee.

## III.

Van Metre next contends that it was not Gandy's statutory employer because he was not employed "in the work" at the time of his accident but was engaged in mere preparatory work in order to reach the job site. Van Metre asserts that the commission erred in imposing liability premised on the notion that B & D was in the process of performing the contract between B & D and Van Metre at the time of the injury. We disagree. While it is true that the method of calculating payment for B & D's work commenced when the truck reached the job site, it does not follow that B & D was operating outside the terms of the contract at the time of the accident. Basic contract principles control here. Van Metre requested that a truck and driver be dispatched to the Driggs site. Pursuant to this request, B & D directed Gandy to proceed to the site and he was injured enroute. Assuredly, Gandy's accident arose out of and in the course of his employment with B & D. We agree with the commission that his rights as a statutory employee of the party (Van Metre) with whom B & D contracted cannot be defeated by the fact that Van Metre's contractual obligation was conditioned upon arrival at the job site. To hold otherwise would subvert the legislative intent behind these statutes.

We do not find that *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969), controls the question presented here. In that case, the issue was whether an employee who had accepted compensation benefits from his employer, a trucking company delivering for a material supplier, could bring a common law tort action against the contractor to whom he was delivering material. If the supplier was an "other party" as described in Code §§ 65.1-40 and 41, the suit could be maintained. If not, then workers' compensation was the only remedy. The holding turned on whether the claimant and the contractor were engaged in the same trade, business or occupation. They were held not to be and the common law action was allowed. In the instant case, however, there is no dispute that all parties involved were in the same trade, business, or occupation. We do not read *Burroughs* as extending as far as Van Metre contends.

IV.

The next contention is that the commission erred in not ordering that Gandy's compensation be paid from the Uninsured Employer's Fund, Code § 65.1-149, or in not ordering that Van Metre be indemnified by the Fund. We reject both of these contentions.

Code § 65.1-149 provides:

After an award has been entered against an employer for compensation benefits under any provision of this chapter, and upon a finding that the employer has failed to comply with the provisions of § 65.1-104, . . . the Commission shall order the award to be paid from the Uninsured Employer's Fund.

Code § 65.1-104 requires that all employers subject to the Act secure their liability thereunder by either having insurance or establishing proof of financial ability to pay. Van Metre argues that as an award was also entered against B & D, who was uninsured, then recovery by Gandy should be against the Fund. To accept this argument would, in effect, abrogate the purpose and meaning of the statutory employer statutes heretofore discussed. No statutory employer would ever be liable under similar facts. The commission held that because an award had been entered against an employer (Van Metre) who was insured, the provisions of Code § 65.1-149 were inapplicable. We agree. The statute makes no distinction between an immediate employer and a statutory employer in the ascending scale. The purpose of the Fund is to insure that injured employees will be paid their compensation benefits even though their employer has breached his duty to secure compensation insurance. In most instances there will be no statutory employer and the employee's remedy will be against the Fund, as provided by the statute. But in those instances, as here, where a statutory employer is liable, we hold that the claimant has no right to an award against the Fund. *See Furnival v. Boucher Building Corporation*, 65 O.I.C. 342 (1986).

For the same reasons, it would be illogical to allow indemnification of Van Metre by the Fund. We perceive that the legislative purpose in establishing the Fund was to provide compensation for

claimants, not to indemnify statutory employers or their carriers.

## V.

The further argument is made that Gandy became the loaned employee of Driggs and that as such, Driggs was solely responsible for the payment of compensation. All parties agree that the key factor to be considered in this issue is the power of control.

In *Coker v. Gunter*, 191 Va. 747, 63 S.E.2d 15 (1951), the Supreme Court, in describing the nature of control exercised by the special master over the servant Minggia, stated as follows:

> The moving of the dirt was not Gunter's business, but Lock Joints. Gunter let Minggia and the truck to Lock Joint for whatever hauling and other work Lock Joint wanted done. Gunter retained no direction or control over either while they were about Lock Joint's work. The power of control and direction was entirely direction or control over either while they were about Lock Joint's work. The power of control and direction was entirely with Lock Joint, which told Minggia when to work and when to quit, where to go and what to do, and specifically when and how to handle the truck in the movement which on this occasion resulted in the injury to Coker. The work being done was planned by Lock Joint, and the time, means and method of doing it were under its exclusive control.

*Id.* at 754-55, 63 S.E.2d at 18.

■ The record before us shows clearly that while Driggs exercised considerable control over the employees of those companies (including Van Metre) with which it sub-contracted, such control was not exclusive. A Van Metre vice-president testified that they regularly sent one or two truck foremen to the Driggs site, whose task it was to assure that the employees of the sub-contractor "conducted themselves in a businesslike way," that they did not deviate from their duties, and that they "work[ed] the times they were supposed to work." There was additional testimony that Driggs did not have the power to fire truckers that Van Metre provided for the job site. Where both the general employer and the special employer exercise the requisite degree of control over

the employees work, both will be liable for compensation payments. *See generally* 1C A. Larson, Workmen's Compensation Law, § 48.00 (1986). We hold there was credible evidence before the commission to support its finding that Gandy had not become the loaned employee of Driggs.

## VI.

Of final concern is Van Metre's contention that Gandy failed to prove entitlement to compensation for total work incapacity. The record shows that claimant came under the orthopedic care of Dr. John Bruno on January 23, 1984. He was admitted to the hospital on January 24, 1984, where he was found to have a compression fracture of the inferior L-4 plate. In a work restriction evaluation form, completed by Dr. Bruno and received by the commission on February 27, 1984, he recommended severe restrictions, including no work; he also related Gandy's injury to the industrial accident of January 16, 1984. At the request of Dr. Bruno, Gandy was subsequently seen by Dr. Noer, an orthopedist, and by Dr. James Preuss, a neurosurgeon. The latter diagnosed a recurrent lumbrosacral sprain and a status of post lumbar fusion times two. The record reflects a history of back problems experienced by the Gandy.

In a report dated June 7, 1984, Dr. Bruno stated that the Gandy would never be physically capable of returning to heavy equipment operation. On August 8, 1985, Dr. Bruno reported that the Gandy was disabled from gainful employment, and in a January 17, 1986, work restriction evaluation form, he related that the restrictions were those stated when Gandy was first seen in January, 1984. The final work restriction evaluation was filed by Dr. Bruno on March 18, 1986, in which he questioned whether Gandy was even able to work one to four hours per day as a result of the industrial accident.

█ It is fundamental that a finding of fact made by the Industrial Commission is conclusive and binding on this Court on appeal if supported by credible evidence in the record. *Russell Loungewear v. Gray*, 2 Va. App. 90, 92, 341 S.E.2d 824, 825 (1986). A question raised by conflicting medical opinion is a question of fact. *Commonwealth v. Powell*, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986).

Van Metre argues that Gandy did not prove that he had made a reasonable effort to market his remaining work capacity, citing *Washington Metropolitan Area Transit Authority v. Harrison*, 228 Va. 598, 324 S.E.2d 654 (1985). However, as we view the medical evidence and the commission's holding based thereon, the Gandy was found to be totally disabled, not partially. The rule enunciated in *Harrison* would, therefore, not be applicable. Furthermore, even though the record shows Gandy was involved in employment between various of his periods of disability, each of those jobs was obtained on his own initiative. Thus, Gandy cannot be said to have refused any selective employment because he terminated those positions. *See Big D Quality Home Builders v. Hamilton*, 228 Va. 378, 382 S.E.2d 839, 841 (1984). In short, we find ample credible evidence in the record in support of the commission's award of total disability for the periods contained in the award.

For the foregoing reasons, the review opinion is

*Affirmed.*

Baker, J., and Cole, J., concurred.