## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Donna Lee Brooks

v.

Blueridge General, Inc.

April 26, 2005

Case No. (Law) 04-1229

BY JUDGE MARK S. DAVIS

This matter is before the Court on defendant's Workers' Compensation Plea in Bar. The factual and procedural background of the case, discussion of the issues, and conclusions are set forth below.[1]

### I. Factual and Procedural Background

Plaintiff Donna Lee Brooks alleges in her motion for judgment that, on or about November 21, 2000, she was lawfully on property owned by the City of Norfolk when she was injured while riding in an elevator. Paras. 2, 6, 8-11.

---

[1] Plaintiff is represented by Gregory L. Sandler, Esquire, with the firm of Epstein, Sandler and Flora, P.C., and defendant is represented by Virginia McNeill Poindexter, Esquire, with the law firm of Denton, Poindexter, Jester and Lightfoot.

Brooks also alleges that the building housing such elevator "was utilized by the City for its business activities and offices," and that it "housed several elevators for use by invitees." Para. 2. Brooks contends that defendant Blueridge General, Inc. ("Blueridge"), "whose principal business activity was the maintenance, inspection, repair, construction, and installation of elevators," had been retained by the City of Norfolk "to act as the elevator contracting company for the elevators in the building." Paras. 3, 4.

Blueridge filed a Workers' Compensation Plea in Bar, conceding that it "was under a contract to provide upgrading of the City of Norfolk elevators and subsequently has been under contract to perform maintenance and repairs as needed for the elevators in question." Para. 3. Blueridge alleges that Brooks was a city employee at the time of her injury and, because she has received a workers' compensation award against the City of Norfolk, she is prohibited from suing her employer and is attempting to circumvent this prohibition by suing the City's contractor, Blueridge. Paras. 4, 5. Blueridge goes on to assert that Brooks' "action in tort is prohibited as it flows from contractual duties owed by Blueridge to the City of Norfolk to assist in performance of the City's governmental functions." Blueridge concludes that the "City enjoys a workers' compensation bar for any claim by its employees," and "Blueridge, as plaintiff's co-worker, should also be shielded by the Workers' Compensation bar in performance of its contracted duties to the City." Para. 7.

The plea in bar came before the Court for oral argument on February 25, 2005. At that time the defendant's counsel represented, without objection from plaintiff's counsel, that plaintiff received her workers' compensation benefits from the City of Norfolk, not the Norfolk Commonwealth's Attorney's Office. Plaintiff's counsel represented, without objection that plaintiff worked for the Victim-Witness Office in the Norfolk Commonwealth's Attorney's office, though her job position was funded through a state grant program under which the City of Norfolk applies for and receives funds to pay employees and to provide their benefits and supplies; that the Victim-Witness Office (VWO), which is funded by this grant, operates under guidelines of the Department of Criminal Justice Services (DCJS) and the DCJS is an entity of the Commonwealth of Virginia; that the DCJS administers the VWO pursuant to a statute allowing each city to establish a VWO; and that part of the grant funds were allocated to pay Brooks' workers' compensation premium.

Brooks' affidavit, which was submitted without objection, indicates that Brooks' office was located in the Norfolk Commonwealth's Attorney's office; that she received her direction from the Assistant Director of the VWO, the Director of the VWO, the Commonwealth's Attorney, and his assistants; that

Brooks submitted her leave requests to the Commonwealth's Attorney's office; that the Commonwealth's Attorney's office conducted her performance evaluations and furnished her a vehicle for official travel; that she was terminated by the Norfolk Commonwealth's Attorney; and that she was not permitted to participate in the City of Norfolk Employee Credit Union.[2] Brooks was described by her counsel as a hybrid employee, where the Commonwealth's Attorney's office administers the program, funded by the Commonwealth of Virginia through payment to the City of Norfolk, and such program governs the means and manner in which she does her job.

## II. Discussion

### A. Standard

A plea in bar is a defensive pleading that reduces litigation to a single issue, which, if proven, creates a bar to the plaintiff's right of recovery. *Cooper Industries v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 595 (2000). The party asserting the special plea bears the burden of establishing the defense. *Whitley v. Commonwealth*, 260 Va. 482, 493, 538 S.E.2d 296, 302 (2000).

### B. Contentions of the Parties

In addition to the factual assertions above, plaintiff contends that it is undisputed that the City of Norfolk contracted with Blueridge to install the subject elevator and the elevator had only a temporary certificate at the time of the injury. Plaintiff also contends it is undisputed that the City of Norfolk maintains elevator inspectors on its staff, though it does not maintain elevator installers or mechanics, and it contracts out the maintenance and repair of its elevators to Blueridge. Plaintiff argues that, while Virginia Code § 65.2-307 provides that an injured employee's remedies shall be limited to those provided under the workers' compensation act, Virginia Code § 65.2-309 tempers this exclusivity by preserving an injured employee's right to pursue an independent action against an "other party." Plaintiff argues further that, in order to be an "other party," a defendant must have been a stranger to the

---

[2] Because no objection was made to the facts stated at oral argument or in the post-argument briefs and affidavit, the Court will treat such information as factual stipulations.

trade, occupation, or business in which the employee was engaged when injured. Therefore, plaintiff argues, the question is whether defendant is engaged in that trade, business, or occupation of the employee.

Plaintiff claims this case is virtually identical to *Farish v. Courion Industries, Inc., and Otis Elevator Co.*, 722 F.2d 74 (4th Cir. 1983), where the court concluded that, despite University employees performing minor elevator repairs, it was not the trade, occupation, or business of the University of Virginia to engage in the installation, repair, or maintenance of elevators and defendant Otis was, therefore, a stranger to the trade, occupation, or business in which the employee was engaged when injured. Plaintiff contends that the City of Norfolk was not engaged in the trade, occupation, or business of the installation, repair, or maintenance of elevators, as they did not maintain employees to perform those tasks. Plaintiff says that, since the entire elevator upgrade project was contracted out to Blueridge, and, separately, the repair and maintenance obligations, on an ongoing basis, were also contracted out to Blueridge, if plaintiff had been a Blueridge employee or an employee of a subcontractor hired by Blueridge, then she would not be a stranger to the trade, business, or occupation. Plaintiff contends, however, that is not the case on these facts.

Plaintiff also contends that the "entire premise of Defendant's primary argument respecting the Workers' Compensation Act's exclusivity provision, is founded upon the conclusion that the Plaintiff is actually an employee of the City of Norfolk." Plaintiff asserts that, if the Court fails to reach the conclusion that she was a city employee, there can be no application of the workers' compensation bar. Plaintiff asserts that the analysis for determining "'of whom' one may be an employee" is much the same as the analysis employed to determine whether a person is an employee or an independent contractor. Applying the analysis applicable to the latter of those questions, which focuses on who has the right to control the person's activities, plaintiff asserts that she was really not an employee of the City of Norfolk, implying that she was an employee of the Norfolk Commonwealth's Attorney's office for purposes of workers' compensation.[3]

Plaintiff's argument is therefore two-fold: (1) she was not an employee of the City of Norfolk, but of the Norfolk Commonwealth's Attorney's Office, and can therefore maintain her tort suit against Blueridge General as an "other

---

[3] Brooks has not alleged that her injury failed to arise out of and in the course of her employment. Such an allegation of course, would be inconsistent with her application for, and receipt of, workers' compensation benefits.

party" to her employment; and (2) even if she was an employee of the City of Norfolk, Blueridge General was not engaged in the same trade, occupation, or business as the plaintiff at the time of her injury and was therefore an "other party" to her employment against whom she was free to bring suit. Plaintiff asserts that, for both of these reasons, she is entitled to maintain her suit against Blueridge General.

Defendant Blueridge counters that it is uncontested that Brooks applied for and received workers' compensation benefits from the City of Norfolk, as reflected in an Award Order dated May 7, 2002, and that Brooks was a "special employee" working in the Commonwealth's Attorney's Office Victim Witness Assistance Program. Therefore, Blueridge asserts, Brooks was an employee of the City of Norfolk and a co-employee of Blueridge. Blueridge further asserts that it performed an essential part of the City's business by performing maintenance and repairs to the elevators contained in the City building, though the City had its own elevator inspectors who issued permits for the subject elevators as well as its own maintenance employees who performed multiple tasks related to the safe maintenance and operation of its facilities. Blueridge also argues that the "normal work" test applied in *Farish* is not the sole test for determining statutory employer status, and also distinguishes *Farish*, arguing that the "role of elevator maintenance to a university is entirely different than to a municipality which owns and operates buildings for use by the public and retains its own elevator inspectors and maintenance employees." Blueridge concludes that, since a municipality can be engaged in any business it desires, "the maintenance work delegated by contract to Blueridge is part of the trade, business, or occupation of the City" making Brooks and Blueridge co-workers. Hence, reasons Blueridge, as co-workers who are precluded from maintaining tort suits against each other for injuries arising out of and in the course of their employment, Brooks exclusive right and remedy is recovery under the Virginia Workers' Compensation Act.

## C. City Employment

The Court must first determine whether Brooks was a direct or statutory employee of the City of Norfolk, since Blueridge General would be an "other party" against whom she could maintain her tort suit if she had no direct or statutory employment relationship with the City. It is unquestioned that she is a hybrid employee. Blueridge contends that Brooks is a "special employee." If the Court determines that Brooks is a statutory employee of the City, it is not necessary to determine whether she is a direct employee. While the Court must therefore evaluate Brooks' status as a statutory employee, it is also helpful to

examine the various concepts that apply to determination of common law employment status defining her right to receipt of workers' compensation benefits. Accordingly, the Court will briefly review the options for Brooks' common law employment status.

Blueridge maintains that Brooks was a special employee of the Norfolk Commonwealth's Attorney, implying that she was a general employee of the City of Norfolk. Brooks maintains that she was not an employee of the City of Norfolk in any way, and implies that she was an employee of the Norfolk Commonwealth's Attorney. Looking at those contentions, it is well-established at common law that, when a general employer loans an employee to a special employer and the employee is doing the work of the special employer under his direction and control, such person becomes the employee of the special employer. *Marshall Erdman & Associates, Inc. v. Loehr*, 24 Va. App. 670, 485 S.E.2d 145 (1997) (*citing Ideal Steam Laundry v. Williams*, 153 Va. 176, 149 S.E. 479 (1929)), 1-2 *Virginia Workers' Compensation*, § 2.25 (Matthew Bender & Company, 2005). The test is whether the special employer has the right to control, not merely the results, but the details of the work of the employee at the time of the accident. *Coker v. Gunter*, 191 Va. 747, 63 S.E.2d 15 (1951). Once the requisite degree of control is established, the special employer becomes liable for workers' compensation benefits under the Workers' Compensation Act. Furthermore, a special employer may be required to compensate an employee even when the general employer may have agreed to do so. *Virginia Poly. Inst. v. Frye*, 6 Va. App. 589, 371 S.E.2d 34 (1988). In *V.P.I.*, the Court noted that the special employer rule is a test used to determine which of *two employers* is liable for compensation benefits of an injured employee and that the Workers' Compensation Act does not mention special employers or loaned employees. *Id.* at 593, 371 S.E.2d at 36. The rule was borrowed from the common law to resolve dual employer situations in the workers' compensation context, providing that the loaned employee must look to his special employer for indemnity for injuries suffered while performing the special employer's work. *Id.* However, "[w]here both the general employer and the special employer exercise the requisite degree of control over the employees work, both will be liable for compensation payments." *A. G. Van Metre, Jr., Inc. v. Gandy*, 7 Va. App. 207, 214-15, 372 S.E.2d 198, 203 (1988). In such a case, the employee becomes the joint employee of the special and general employer. In Virginia, once a determination of joint employment is made, by applying the nine factors identified in *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83, 419 S.E.2d 632, 635 (1992), the workers' compensation benefit liability is either apportioned between the joint employers pursuant to Va. Code § 65.2-520

where the employee is receiving wages from both, or is apportioned equally between the employers where the employee receives wages from only one but worked for both employers. *Shiflett v. JVC Enterprises, Inc.*, VWC File No. 177-12-91 (October 21, 1997) (opinion of the Virginia Workers' Compensation Commission).

As noted above, these general, special, and joint employer rules focus in large part on which entity has control over the employee, because they were developed to determine how workers' compensation *benefits* should be paid to an injured employee and who should bear that risk of making such payments without the countervailing requirement to prove fault. However, in the case currently before this Court, the task is slightly different. The Court must evaluate Brooks' statutory employment status. The task is different than evaluating Brooks' common law employment status because the concept of "statutory employment" is broader than the concept of common law "employment," and an employee may have more than one statutory employer. *See Sites v. Harbeson*, 16 Va. App. 835, 837, 434 S.E.2d 1, 1-2 (1993); *see also Tucker v. Union Oil Co.*, 100 Idaho 590, 593 (1979) (discussing the conceptual differences). While courts must look primarily to control factors in determining employment status, the concept of statutory employment is broader and forces liability upon parties not in privity of contract.

In discussing the difference between these concepts, one court in another jurisdiction noted that the statutory relationship of employer–employee, for purposes of determining workers' compensation statutory employment versus common law employment, exists not by reason of any elements of control, but simply because the workers' compensation statute established the relationship under the proper factual situation. *See Adam v. Titan Equipment Supply*, 93 Idaho 644, 647, 470 P.2d 409, 412 (1970), *see also Pfeifer v. Kraus Constr. Co.*, 262 Va. 262, 266, 546 S.E.2d 717, 718-19 (2001) (noting statutory employment can exist outside scope of common law employment). As the *Gandy* Court noted, the purpose of the statutory employer scheme is "to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business, or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work and to make liable to every employee engaged in that work every such owner, or contractor, and sub-contractor, above such employee." *Gandy*, 7 Va. App. at 211, 372 S.E.2d at 201. However, "when the employee reaches an employer in the ascending scale, of whose trade, business, or occupation the work being performed by the employee is not a part, then that employer is not liable to that employee for compensation. . . ." *Id*. It is at that point that the employee's right of action at common law is preserved. *Id*. Therefore, since the "other

party" question posed by Brooks hinges upon the *statutory* scope of her work vis-à-vis the City of Norfolk, the Court must determine whether the work in which Brooks was engaged was the trade, business, or occupation of the City of Norfolk. If it was, then the Court moves on to determine whether *Blueridge* was an "other party" in the context of that statutory employer relationship.

In determining the trade, business, or occupation of a governmental entity, any activity which the owner is authorized or required to do by law or otherwise is considered the trade, business, or occupation of the owner. *Nichols v. VVKR, Inc.*, 241 Va. 516, 521, 403 S.E.2d 698, 701 (1991). The parties to this matter do not dispute that Brooks was paid by funds that came to the City of Norfolk through a grant from the Commonwealth of Virginia. This money was reflected in the budget of the City of Norfolk. In fact, Va. Code § 9-173.3 (now amended as § 9.1-104) provided, in the year 2000, that the "Department of Criminal Justice Services shall promulgate rules and regulations, the purpose of which shall be to make funds available to local governments for establishing, operating, and maintaining victim and witness assistance programs which provide services to the victims of crime and witnesses in the criminal justice system" and that the Department of Criminal Justice Services (DCJS) "shall establish a grant procedure to govern funds awarded for this purpose." The Virginia Administrative Code, at 6 V.A.C. 20, reviews the legislative mandate of the DCJS to promulgate regulations for operating the victim and witness assistance programs. This section of the Administrative Code also provides that regulations for the DCJS are available at its website, http://www.dcjs.state.va.us/DIVISION. The Grant Program Profile for funds to operate a victim witness office is found at that site. It indicates that "[i]n 1984, the General Assembly created the victim/witness grant program and designated DCJS as the administering agency." The profile goes on to note that the "Victims of Crime Act (VOCA), passed by Congress in 1984, established a crime victims fund and authorized the Director of the Office for Victims of Crime to make annual VOCA victim assistance and compensation grants to states." The profile goes on to state that the DCJS uses federal VOCA funds as well as state Special Funds. This specific information is consistent with the general facts stipulated by the parties.

Because of the method by which Brooks' position was funded, the plaintiff would have the Court find that she was not a direct or statutory employee of the City of Norfolk. The parties have characterized the question as whether the Court should "follow the money" in determining the identity of Brooks' employer, or "follow the supervision and control" in making that determination. However, both of these characterizations miss the mark. As described above, the Court must ask whether Brooks was, at the very least, a

statutory employee of the City of Norfolk. Funding for Brooks' position clearly came to the City of Norfolk from a grant submitted to the DCJS. The City of Norfolk, *pursuant to a specific statutory authorization*, chose to seek the grant from DCJS for these funds and to place Brooks in the office of the Norfolk Commonwealth's Attorney.

The Charter of the City of Norfolk provides, among other things, that the City shall have the power "to do all things whatsoever necessary or expedient for promoting or maintaining the general welfare, comfort, education, morals, peace, government, health, trade, commerce, or industries of the city or its inhabitants." Norfolk City Charter, § 2, para. 26. This seemingly catch-all provision recognizes the reality that a municipality must be empowered to perform a myriad of functions beneficial to and needed by its inhabitants. That is precisely what the City of Norfolk did when it applied for the grant to fund the Victim Witness Office. As plaintiff described her job in the affidavit she submitted, it was to "administer the state DCJS program of providing assistance to witnesses, victims of crimes, and their families. . . ." Affidavit, para. 8.

The Virginia Code specifically authorized the providing of such funds to "local governments," as noted above, and the City took advantage of the opportunity to obtain such funds to provide for the welfare of its citizens. Va. Code § 9-173 (now § 9.1-104). While Brooks' position might, for purposes of evaluating entitlement to workers' compensation benefits, be most appropriately viewed as a special employee (or "borrowed servant") position in the Norfolk Commonwealth's Attorney's Office and a general employee of the City of Norfolk, which loaned her position to the Commonwealth's Attorney, that is of little moment when the question is whether she was a statutory employee of the City of Norfolk. Since Brooks' work in the VWO was an authorized governmental activity of the City of Norfolk, the City is her statutory employer in addition to being her general employer. *See Adam*, 93 Idaho at 647, 470 P.2d at 412 (explaining concept of general employer as statutory employer). The normal work test applicable to private entities, in determining statutory employment, "does not apply to the determination of the trade, business, or occupation of a governmental entity." A governmental entity does not have the ability to choose its activities. Therefore, "any activity which the owner is authorized or required to do by law or otherwise, is considered the trade, business, or occupation of the owner." *Jones v. Commonwealth*, 267 Va. 218, 223-24, 591 S.E.2d 72, 75-76 (2004). Since Brooks was engaged in work which the state code specifically authorized local governments to perform, since the Charter of the City of Norfolk provides the City with broad authority to perform the activities authorized by the applicable

state code provision, since Brooks does not contest that she was injured in the course of and arising out of her employment, and since Brooks sought and received workers' compensation benefits from the City of Norfolk, she was, at the very least, the statutory employee of the City of Norfolk, with regard to that work she was performing when injured.

The Court also notes the decision in a situation somewhat similar to that presently before the Court. In *Miller v. Department of Youth and Family Services*, 49 Va. Cir. 208 (Loudoun County 1999), a Loudoun County Deputy Sheriff was severely injured when he was assaulted by juvenile inmates housed in the Juvenile Interim Holding Facility. The Deputy sued the Department of Youth and Family Services (DYFS), the Commonwealth of Virginia, Loudoun County, the Virginia State Board of Youth and Family Services, and the Twentieth Judicial District Court Services Unit. The court noted that the Deputy was "one of those distinctive government employees who works for and engages in the business of more than one governmental employer." *Id.* at 211. The court went on to observe that the Deputy "obviously serves under the Loudoun County Sheriff, a constitutional officer, and is an employee of the Loudoun County Sheriff's Office, but he also is an employee, within the contemplation of the Workers' Compensation Act, of the Commonwealth of Virginia and the County of Loudoun." *Id.* The Commonwealth paid a portion of the Deputy's salary and expense allowance pursuant to Va. Code § 14.1-79, and pursuant to a Cooperative Agreement between the Board of Supervisors and the Sheriff the County paid the remaining portion of the Deputy's salary and benefits. The Court observed that the "Virginia Code is replete with sections authorizing and empowering the state and local governments to perform such functions." *Id.* That court concluded that the Commonwealth and its agencies, and Loudoun County, were not considered "strangers to the business" in which the Deputy was involved when he was injured, and dismissed Miller's action against them on the grounds that such action was barred by the exclusivity provisions of the Virginia Workers' Compensation Act. *Id.* at 212. *See also Coyle v. Wilson, Mitchell, and Dinwiddie County*, VWC File No. 168-13-90 (1995) (Dinwiddie County not statutory employer of contractors performing work where there was no legislative mandate to participate in state grant program and country was therefore just a conduit for funds). Unlike *Miller*, there does not appear to be joint employment on the stipulated facts presently before this Court, but the government entity/grant analysis is helpful because it reaches a similar result to that reached here.

Having determined that Brooks is a statutory employee of the City of Norfolk, the Court must now determine whether Blueridge is an "other party"

under the Virginia Workers' Compensation Act, as provided in Va. Code § 65.2-309, such that Brooks can maintain a tort suit against Blueridge.

## D. "Other Party" Determination

Va. Code § 65.2-309 provides that a "claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee . . . may have against any *other party* for such injury or death. . . ." Va. Code § 65.2-309(A) (emphasis added). An "other party" is further defined by Va. Code § 65.2-800 as follows: "[a] person other than an employer *or statutory employer*, or a person employed by either, whose acts result in such injury or death shall be deemed an 'other party' within the meaning of § 65.2-309." (emphasis added). Logic dictates that, if the employer can sue an "other party" pursuant to these code provisions, then the employee of such employee can sue an "other party." As the Court noted in *Clean Sweep v. Talley*, 267 Va. 210, 213, 591 S.E.2d 79, 81 (2004), the rights and remedies provided in the Workers' Compensation Act are exclusive of all other rights and remedies of an employee. . . ." The Court went on to recognize that the only exception to this exclusivity provision is provided in Va. Code § 65.2-309(A) permitting an action to be maintained against an "other party." In order to "be an 'other party,' a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured." Furthermore, "[b]ecause he is not a 'stranger to the employment,' an allegedly negligent employee of one contractor, engaged in the same business, or project of an owner as an injured employee of another contractor, is not an 'other party' amenable to suit. . . ." *Id.* Accordingly, we must apply this legislative language to the facts of this case to determine whether Blueridge is an "other party" against whom suit may be maintained by Brooks.

As the parties have noted, *Farish v. Courion Industries, Inc.*, 722 F.2d 74 (4th Cir. 1983), is a case quite similar to the facts of this case. (The *Farish* opinion was cited as an example by the Virginia Supreme Court in *Carmody v. F. W. Woolworth Co.*, 234 Va. 198, 206, 361 S.E.2d 128, 132 (1987), in applying the "normal work" test.) In that case an employee of the University of Virginia was working within the scope of his employment as a plumber when he was severely injured in a University Hospital freight elevator while he was removing a tool cart from such elevator. The employee's guardian filed suit against the elevator manufacturer (Courion Industries, Inc.) and an elevator contractor (Otis Elevator Company) that operated under two contracts with the University. One of the contracts was to maintain fully six passenger

elevators in the medical complex and the other contract was to provide for the "survey, test, and inspection" of all University elevators. *Id.* at 76.

The *Farish* court first noted that the issue was whether Otis is an "other party" under the Workers' Compensation Act "and thus can be sued by Farish even though her husband received Workmen's Compensation benefits from his employer, the University, who is the 'owner' who hired Otis as an independent contractor." *Id.* at 78. The Court noted that the Workers' Compensation Act expressed the "universal principle that an employer providing Workmen's Compensation benefits to injured employees is immune from common law suit for negligently causing the injuries." *Id.* Furthermore, "the language in §§ 65.1-41 and 65.1-103 (now §§ 65.2-309 and 65.2-800), in contrast, has been uniformly interpreted to allow a common law negligence action for injuries against an 'other party,' that, although performing work or providing services for the employer, is a 'stranger' to the employer's normal work."

The *Farish* court then quoted from then Va. Code § 65.1-29. That provision has been recodified at Va. Code § 65.2-302(A), as follows:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any others person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

*Id.* at 79.

The *Farish* court went on to note that although "the basic purpose of § 65.1-29 [now § 65.2-302] is to assure that workers are protected by responsible employers paying Workmen's Compensation benefits, the section has the ancillary effect of placing independent contractors subject to its terms under the protective umbrella of the owner's Workmen's Compensation coverage." *Id.* Furthermore, since "an independent contractor performing services for a 'statutory employer' cannot be an 'other party' liable in a common law action," the "contractor's employees are therefore barred from suing their employer to the same extent that they are barred from suing the owner who is their 'statutory employer'." The *Farish* Court then observed that "[l]ikewise, an employee of the owner, such as Farish, could not sue the

independent contractor, such as Otis, for injuries caused by the contractor's negligence, if it is performing the normal work of the owner." *Id.* at 80.

The *Farish* court went on to discuss the "normal work" test, stating that the "type of work performed by the independent contractor determines whether the owner with whom it has contracted is the 'statutory employer' of the contractor's employees" and if "the independent contractor is performing the owner's normal work, then the owner is a statutory employer of the former's employees." *Id.* The court then quoted *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), and *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), for the explanation of the normal work test:

> The test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction, or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

*Farish*, 722 F.2d at 80 (emphasis in original).

The *Farish* court then concluded that the normal work test did not bring Otis under the University's workers' compensation coverage and immunize it from suit, noting that while "University employees effect minor elevator repairs in most of the buildings, the responsibility for all major repairs at the time of the accident belonged to Otis or other elevator companies" and it was "especially significant that surveys, tests, and inspections were conducted exclusively by Otis employees because such service required particular skills and expertise." *Id.*

While analyzing this issue, the *Farish* court noted that the general rule is that "major repairs, or specialized repairs of the sort which the employer is not equipped to handle with his own force, are held to be outside his regular business . . ." and therefore, "in those cases, the owner is not the 'statutory employer' of the contractor's employees and an action may be maintained against it as an 'other party'." *Id.* (citing *Bassett*, 216 Va. at 902, 224 S.E.2d at 326 as quoting this principle).

Much like the defendant here, Otis argued that the University was a statutory employer to the employees of Otis and that Farish's only recourse was under the Workers' Compensation Act and cited cases involving

governmental entities in support of its argument. For that proposition, the plaintiff in *Farish* cited *Williams v. Gresham Co.*, 201 Va. 457, 111 S.E.2d 498 (1959), and *Anderson v. Construction Co.*, 201 Va. 266, 110 S.E.2d 396 (1959), *appeal dismissed*, 363 U.S. 719 (1960). The *Farish* court dismissed application of those cases to the facts before it, noting that there was no question that the independent contractors involved there were performing the normal business the legislature mandated for them to perform. Here, Blueridge asserts that a post-*Farish* line of cases culminating in *Ford v. City of Richmond*, 239 Va. 664, 391 S.E.2d 270 (1990), dictates a different result.

In *Ford*, the City of Richmond owned, maintained, repaired and operated Byrd Park Reservoir as part of a waterworks system supplying water to the residents of Richmond. The City awarded a contract to Single Ply Systems, Inc., to replace the roof over the reservoir. During the performance of that contract, Ford, who was one of Single Ply's employees, fell through the vent on the roof and died as a result of the fall. Ford's widow filed suit against the City. Looking to its earlier decision in *Henderson v. Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987), the Court stated that it was asked to determine there whether a public utility that engaged an independent contractor to install telephone equipment was the statutory employer of the contractor's employee who was injured in the performance of the contract. The contractor's employee argued that the telephone company did not normally have its employees install equipment, as he was doing. *Id.* at 382, 355 S.E.2d at 599. The *Ford* Court then quoted from *Henderson* for the proposition that public utilities and governmental entities are of a class different from private businesses, whose day-to-day business provides a reasonable indicator of their trade, business, or occupation. However, for governmental entities, "[i]t is not simply what they do that defines their trade, business, or occupation," but what "they are supposed to do is also a determinant." *Ford*, 239 Va. at 667, 391 S.E.2d at 271. In *Ford*, the Court concluded that under "the test applicable to governmental entities, the maintenance work delegated by contract to Single Ply Systems and performed by its employee, Ford, was part of the 'trade, business, or occupation' of the City," and that as "an owner performing such work through an independent contractor, the City was Ford's statutory employer . . . and Ford's exclusive rights and remedies for the" accident were those granted by the Workers' Compensation Act. *Ford*, 239 Va. at 669, 391 S.E.2d at 273.

It is clear that *Henderson* and *Ford* require this Court to apply a test different from that applied in *Farish*. To conduct the analysis mandated by *Ford*, the Court must look to the Virginia Code and the Norfolk City Charter. Va. Code § 15.2-1102 provides a general grant of power to all municipal corporations. Additionally, Va. Code § 15.2-1103 provides that a municipal

corporation shall, in addition to those powers provided by Va. Code § 15.2-1102, have all the powers granted to it in its charter. The Norfolk City Charter provides, at § 2(5), that the city has the power to acquire property within the city "for any of the purposes of the city; to hold, improve . . . any part thereof." The Charter goes on to provide at § 2(7) that the city has the power to *"make and maintain public improvements of all kinds. . . ."* (emphasis added). The Charter goes on, in § 54, to provide for the general powers and duties of the Department of Public Works, indicating that the director of public works *"shall manage and have charge of the construction, improvement, repair, and maintenance and use . . . of all public buildings. . . ."*

In *Ford,* the Court noted that the City of Richmond was empowered by its charter to "own[], maintain[], repair[], and operate[] Byrd Park Reservoir. . . ." *Ford,* 239 Va. at 665, 391 S.E.2d at 271. The *Ford* Court concluded that "[l]ike the public utility in *Henderson,* and ferry district in *Williams,* and the turnpike in *Anderson,* the City of Richmond was authorized and empowered by legislative mandate to perform certain public duties including, in each case, the maintenance of a public facility." *Id.* at 669, 391 S.E.2d at 273. The language of the Richmond City Charter and the language of the Norfolk City Charter are virtually identical on this point. While the City of Richmond was authorized to maintain and repair its facility, the City of Norfolk is empowered to maintain public improvements of all kinds and to have charge of construction, improvement, repair, maintenance, and use of all public buildings. Accordingly, since the trade, business, or occupation of governmental entities is defined by their mandates, and since the mandate of the City of Norfolk includes the improvement, repair, and maintenance of public buildings, the work delegated by the City of Norfolk to Blueridge, and performed by Blueridge employees, was part of the trade, business, or occupation of the City of Norfolk.

Just as in *Ford,* it can be said here that, "[a]s an owner performing such work through an independent contractor, the City" was the statutory employer of Blueridge's employees performing duties pursuant to their contract with the City. Therefore, Blueridge's employees and the statutory employees of the City are co-employees whose exclusive rights and remedies for an injury by accident, arising out of and in the course of their employment, are against their employer. *Ford* means that, if an employee of Blueridge had been injured while working on this same elevator (whether the City of Norfolk had employees who did the exact same kind of work or not), such Blueridge employee could not seek a recovery at law from the City of Norfolk, only an award of workers' compensation benefits. As the *Farish* court noted in its review of the general principles applicable in this area of the law, "[l]ikewise, an employee of the owner, such as [Brooks], could not sue the independent contractor such as

[Blueridge], for injuries caused by the contractor's negligence, if it is performing the normal work of the owner." *Farish,* 722 F.2d at 79-80.

If there is any doubt that Brooks' status as a statutory employee of the City of Norfolk, versus the kind of direct employee referenced in *Farish,* mandates the exact same result, one need only look to the Virginia cases applying the rule to statutory fellow employees. For example, in *Lincecum v. Alrod Ent., Inc.,* 44 Va. Cir. 4, 5-6 (Norfolk 1997), plaintiff was employed as a waitress/cashier, by a federal government entity, at the Armed Forces Staff College. Plaintiff slipped and injured herself while walking down a hallway that had been waxed by defendant, a contractor providing janitorial services at the Staff College pursuant to a contract with a federal government entity different from the one employing plaintiff. *Id.* Plaintiff alleged such defendant failed to properly post warning regarding the freshly-applied wax. Plaintiff applied for and received federal workers' compensation benefits. Applying the "authorized government activity" test of *Ford,* the court concluded that the plaintiff was a "statutory fellow employee" of defendant and therefore the plaintiff could not maintain a cause of action for common law negligence against defendant because of the Act's exclusivity provisions. *Id., see Evans v. Hook,* 239 Va. 127, 131, 387 S.E.2d 777, 779 (1990) (fellow statutory employees entitled to immunity from suit).

While the Court recognizes that the result, dictated by the cases discussed above, is at odds with the outcome in *Farish* and that the outcome dictated by the "authorized government activity" method of determining the normal trade, business, or occupation of an owner can sweep with a broad brush (as plaintiff argues), the Virginia Supreme Court has defined the test applicable under the current Virginia Workers' Compensation Act to governmental entities in such a way as to change the outcome should *Farish* be considered under the present state of the law. One need only look to the Court's decision in *Jones,* 267 Va. at 224, 591 S.E.2d at 76, where the Court, in the year 2004, held that the exclusivity provisions of the Workers' Compensation Act barred suit against the University of Virginia and its employee for damages arising from the discharge of its governmental duties, to understand that a different outcome would be dictated.

As the Virginia Supreme Court recognized in *Fauver v. Bell,* 192 Va. 518, 521, 65 S.E.2d 575, 577 (1951), the purpose of the Workers' Compensation Act is to provide "compensation, in the nature of insurance, to a workman or his dependents, in the event of his injury or death, for the loss of his opportunity to engage in gainful employment when disability or death was occasioned by an accidental injury or occupational disease, to the hazard or risk of which he was exposed as an employee in the particular business, without regard to fault as to the cause of such injury or death." The *Fauver* Court went on to note that the

"pecuniary loss incident to the payment of the compensation is cast upon the employer as a part of the expenses of his business." *Id.* More recently, in *Morris v. Morris*, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989), the Court explained the Workers' Compensation Act's purpose and limitations as "a carefully balanced societal exchange between the interests of employers, employees, insurers, and the public." An employee under the Workers' Compensation Act obtains coverage without the necessity of showing fault on the part of the employer. However, the benefit of having such workers' compensation coverage also results in the loss of an opportunity to seek recovery at law from the employer and anyone else performing the employer's trade, business, or occupation. The manner in which that carefully balanced societal exchange has been struck in the Commonwealth of Virginia results in Brooks' receiving benefits from the City of Norfolk, as she did, without the need to meet the common law tort recovery requirements, but losing the opportunity to pursue recovery against the City or contractors performing the work of the City. The manner in which this carefully balanced societal exchange has been struck means that Blueridge is not an "other party" against whom Brooks may maintain a suit in tort.

## III. Conclusion

The defendant's Plea in Bar is granted and the plaintiff's suit is dismissed. The parties have thoroughly briefed these issues and the Court has recited such arguments in this Opinion and Order. Therefore, the Court will dispense with the Va. Sup. Ct. R. 1:13 counsel endorsement requirement. It is so ordered.