COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, McCullough and Chafin
Argued at Salem, Virginia


JAMES A. WELLS, JR.

                                                            MEMORANDUM OPINION* BY
v.        Record No. 0932-13-3                          JUDGE TERESA M. CHAFIN
                                                            DECEMBER 17, 2013

GOODYEAR TIRE & RUBBER COMPANY AND
  LIBERTY MUTAL INSURANCE


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Steven G. Bass (Carter Craig, Attorneys at Law, on brief), for
              appellant.

              B. Patrick Agnew (Agnew & Rosenberger PLLC, on brief), for
              appellees.


       James A. Wells, Jr. ("Wells") appeals a decision of the Workers' Compensation

Commission ("commission") denying his claim for temporary partial disability payments.  Wells

presents two assignments of error on appeal.  First, he contends that the commission erred in

finding that the work restriction imposed by his treating physician was limited only to his work

with Goodyear Tire & Rubber Company ("Goodyear") and in holding that Wells had failed to

prove entitlement to temporary partial disability benefits.  Wells also contends that the

commission erred in holding that Goodyear was not estopped in asserting the defense of failure

to market residual work capacity after depriving Wells of an open award by unilaterally changing

the course of conduct between the parties.  For the reasons that follow, we affirm the decision of

the commission.

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (en banc).

So viewed, the evidence proved that on February 5, 2005, while employed by Goodyear, Wells suffered an injury to his left shoulder in a work accident compensable under the Virginia Workers' Compensation Act ("the Act"), Code §§ 65.2-100 through 65.2-1310. Beginning on November 7, 2005, Wells received temporary partial compensation benefits pursuant to several separate supplemental awards that were calculated and adjusted on a monthly or quarterly basis. Wells testified in his deposition that he sent his pay-stubs to Goodyear's insurance carrier, Liberty Mutual. Wells then received a check from Liberty Mutual followed by agreement forms, which he would sign and mail back to Liberty Mutual. In February 2011, Wells was notified that Liberty Mutual would no longer pay Wells' compensation benefits. The last award was entered on April 1, 2011 for the period of January 17, 2011 through January 30, 2011.

On November 22, 2005, Dr. Joseph Campbell, Wells' treating orthopedist, released Wells to light-duty work forty-two hours or less each week with permanent restrictions prohibiting him from repetitively lifting over forty pounds and overhead work. Prior to his injury, Wells performed work that involved driving a tow motor and lifting by hand truck tires weighing as much as one hundred pounds and airplane tires weighing as much as eighty pounds. Wells is sixty years old and has worked at Goodyear for thirty-six years. He has been a tire builder for twenty of those years.

Wells returned to light-duty work for Goodyear in the fall of 2005 working forty-two hours each week. Prior to his injury, Wells worked an average of sixty to seventy hours per

week to take advantage of overtime work. [1] Since his return to light-duty work, Wells performs his pre-injury job and self-limits his manner of work, so as to not exceed his physical restrictions. Wells has worked no overtime hours for Goodyear since his return to work, resulting in a decrease in pay.[2] Wells admits that he made no efforts to conduct a job search outside of his pre-injury position at Goodyear.

On December 4, 2009, Dr. Campbell further indicated, "Mr. Wells is to do regular work activities less than 42 hours per week. I believe that working over 42 hours a week would significantly increase the chance that he would re-injure his rotator cuff tear and may lead to overuse syndrome in his elbow and exacerbation of this also." Similarly, on August 22, 2011, Dr. Campbell opined that Wells was limited to "[r]egular duty 42 hours/week." At the hearing before the deputy commissioner, Wells testified that he could not work more hours because his job requires him to drive a tow motor on which "you're constantly turning and lifting . . . [t]ruck tires and airplane tires."

Wells filed a claim for benefits on August 30, 2011, alleging entitlement to temporary partial disability benefits beginning on January 31, 2011 through the present. A deputy commissioner denied Wells' claim for temporary partial disability benefits. The deputy commissioner concluded Wells was not entitled to a presumption of ongoing disability, and thus, Goodyear was not estopped from raising the defense that Wells is no longer entitled to temporary partial disability benefits. The deputy commissioner also found that the work restriction imposed by Wells' treating physician was limited only to his work with Goodyear. Therefore, the deputy

---

[1] Wells testified in his deposition that a normal work week at Goodyear consisted of forty-two hours, and any time worked over the 42 hours was considered overtime.

[2] Wells' pre-injury average weekly wage was $1,533.74. The parties stipulated that Wells worked for Goodyear from January 31, 2011 through June 10, 2012 earning a post-injury average weekly wage of $1,040.14.

commissioner found that Wells had a duty to market his remaining work capacity by attempting to find a light-duty job within his restrictions to supplement his income at Goodyear.

Wells sought review of the deputy commissioner's decision by the commission. The commission affirmed the deputy commissioner's decision.

ANALYSIS

A. *Duty to Market Residual Capacity*

On appeal to this Court, Wells contends that the commission erred in finding that the work restriction imposed by his treating physician was limited only to his work with Goodyear and in holding that Wells had a duty to market his residual capacity.

> "Factual findings of the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the [c]ommission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

Hoy Constr., Inc. v. Flenner, 32 Va. App. 357, 361, 528 S.E.2d 148, 150 (2000). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

There is sufficient evidence in the record to support the commission's finding that Wells' forty-two-hour work restriction from Dr. Campbell did not apply to all types of work. There is no evidence in the record that the forty-two-hour restriction applied to work other than Wells' full-duty job at Goodyear, at which he was required to perform activities which were of concern to Dr. Campbell. To the contrary, the references to the forty-two-hour restriction which appear in Dr. Campbell's notes consistently link the restriction to Wells' regular job at Goodyear.

- 4 -

Nothing in Dr. Campbell's records suggests that Wells could not work additional hours at a job which did not involve the strenuous duties of his job at Goodyear.

Because we find that the forty-two-hour restriction did not apply to all types of work, Wells had residual work capacity that he was required to market. "A partially disabled employee 'who seeks compensation of the wage differential between his new and his old jobs, has the burden of proving that he has made a reasonable effort to market his full remaining work capacity.'" Va. Natural Gas, Inc. v. Clinton Tennessee, 50 Va. App. 270, 282, 649 S.E.2d 206, 212 (2007) (quoting Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 33 (1989)). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." Nat'l Linen Serv., 8 Va. App. at 270, 380 S.E.2d at 32.

> There are no fixed guidelines for determining what constitutes a "reasonable effort" by an employee to market residual work capacity. An employee must "exercise reasonable diligence in seeking employment" and the reasonableness of an employee's effort will be determined on a case by case basis, taking into account "all of the facts and surrounding circumstances."

Ford Motor Co. v. Favinger, 275 Va. 83, 89-90, 654 S.E.2d 575, 579 (2008) (quoting Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987)). However, some of the criteria that should be considered include:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Nat'l Linen Serv., 8 Va. App. at 272, 380 S.E.2d at 34 (footnotes omitted). "In sum, an employee 'must present some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition and has failed to find a job, either due to his

- 5 -

injury or because no such work was available in the community.'" Favinger, 275 Va. at 90, 654 S.E.2d at 579 (quoting Nat'l Linen Serv., 8 Va. App. at 271, 380 S.E.2d at 34).

We are guided by the Supreme Court of Virginia's decision in Favinger, 275 Va. 83, 654 S.E.2d 575. There, Favinger worked full-time in a body shop for employer, and also had the opportunity to work overtime hours. Id. at 86, 654 S.E.2d at 576. After his injury, Favinger returned to a light-duty position with the same employer, earning the same wage as he earned pre-injury. Id. However, in this light-duty position, Favinger was not offered any overtime work. Id. Favinger filed a claim for temporary partial disability benefits, based on this lost overtime. Id. at 86, 654 S.E.2d at 577. The Supreme Court reversed the commission's award of benefits based on the lost overtime, holding that there was no evidence in the record demonstrating that Favinger had made any efforts to market his residual capacity. Id. at 90, 654 S.E.2d at 579. The Court found that Favinger had the burden of proving that "available jobs within his capacity would have interfered with his duties at [employer], including his ability to accept overtime work when offered by [employer]." Id. at 90-91, 654 S.E.2d at 579. The mere fact that Favinger accepted the selective employment offered by his employer, and remained available to work any overtime hours offered, "did not negate the requirement that he make a reasonable effort to market his residual work capacity, i.e., the additional 10 hours of overtime." Id. at 91, 654 S.E.2d at 579.

Similar to Favinger, Wells routinely worked sixty to seventy hours per week before his injury. Upon his return to light-duty work, Wells continued in his pre-injury position at Goodyear, self-limiting his work to fit within his work restrictions. It is undisputed that Wells has not looked for other employment. An acceptance of light-duty work is not, of itself, sufficient to constitute a good faith effort to market residual capacity. See Favinger, 275 Va. at 83, 654 S.E.2d at 575; CVS # 1549/CVS of Va., Inc. v. Plunkett, 57 Va. App. 373, 702 S.E.2d

578 (2010); <u>Wall Street Deli, Inc. v. O'Brien</u>, 32 Va. App. 217, 527 S.E.2d 451 (2000). We therefore conclude, as a matter of law, that Wells did not reasonably market his residual work capacity and is not entitled to temporary partial disability benefits.

*B. Estoppel*

Wells also contends that the commission erred in holding that Goodyear was not estopped in asserting the defense of failure to market residual work capacity. We disagree.

"'Estoppel by conduct, whereby a party will not be heard to deny that which he has induced others to rely upon as true, extends without limit throughout the law.'" <u>Roske v. Culbertson Co.</u>, 62 Va. App. 512, 522, 749 S.E.2d 550, ___ (2013) (quoting <u>Emrich v. Emrich</u>, 9 Va. App. 288, 293-94, 387 S.E.2d 274, 276 (1989)). "[I]n order for there to be any estoppel, there must be detrimental reliance by the party claiming estoppel." <u>Id.</u> at 522, 749 S.E.2d at ___. "In other words, 'the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct.'" <u>Id.</u> (quoting <u>Ford Motor Co. v. Switzer</u>, 140 Va. 383, 395-96, 125 S.E. 209, 213 (1924)). "To establish an estoppel in judicial proceedings, one must prove by 'clear precise and unequivocal evidence that it should be invoked.'" <u>Richfood, Inc. v. Ragsdale</u>, 26 Va. App. 21, 24 n.2, 492 S.E.2d 836, 837 n.2 (1992) (quoting <u>Brown v. Lawson Transp. Corp.</u>, 7 Va. App. 679, 681, 377 S.E.2d 136, 137 (1989)). Among the elements which must be established to prove estoppel are

> 1) the inconsistent position first asserted must have been successfully maintained; 2) a judgment must have been rendered; 3) the positions must be clearly inconsistent; 4) the parties and questions must be the same; 5) the party claiming estoppel must have been misled and have changed his position; and 6) it must appear unjust to one party to permit the other to change.

28 Am. Jur. 2d <u>Estoppel and Waiver</u> § 70 (1966).

In successive actions between two parties, "'a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him.'" Richfood, 26 Va. App. at 23-24, 492 S.E.2d at 837 (quoting 28 Am. Jur. 2d Estoppel and Waiver § 68 (1966)); see also Brown, 7 Va. App. at 681, 377 S.E.2d at 137.

In this case, Wells received temporary partial compensation benefits pursuant to various separate supplemental awards that were calculated and adjusted on a monthly or quarterly basis. Wells argues that by executing the various separate supplemental awards, Goodyear accepted that no marketing by Wells was necessary, and it is unjust to permit Goodyear to change its position after having established a contrary position in signing agreements for entry of awards for over five years.[3] Wells states that he signed the execution of his last separate supplemental award based on his belief that the course of conduct between Goodyear and himself would continue. He argues that he relied on this course of conduct to his detriment because his earnings under his injury-related restrictions were less than his pre-injury earnings. However, even if Wells relied on this course of conduct, he was not justified in doing so.

> There is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time. To the contrary, a party seeking compensation bears the burden of proving his disability and the periods of that disability.

Marshall Erdman & Assocs., Inc. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149 (1997). Even though Wells received temporary partial disability compensation pursuant to various separate supplemental awards, he is not entitled to a presumption that the prior course of conduct between Goodyear and himself would continue or that he would remain disabled for an

---

[3] The last award was entered on April 1, 2011 for the period of January 17, 2011 through January 30, 2011. However, Wells did not file a change-in-condition form until August 30, 2011, alleging entitlement to temporary partial disability benefits beginning on January 31, 2011.

"indefinite period of time." Id. It was Wells' burden to prove entitlement to temporary partial disability benefits from January 31, 2011 and continuing.[4] Id. As we found above, Wells failed to prove his entitlement to temporary partial disability benefits and was required to market his remaining work capacity. Therefore, we find that Wells was not prejudiced by Goodyear's decision to discontinue the separate supplemental awards and, thus, Goodyear is not estopped from asserting the defense that Wells is no longer entitled to temporary partial disability benefits.

Affirmed.

---

[4] Rule 1.2 of the Rules of the Commission requires a claimant seeking a change in condition do so in writing with a copy to be sent to the employer. Rule 1.2B provides that no additional compensation may be awarded more than ninety days before the filing of the claim with the commission. Thus, had Wells been entitled to temporary partial disability benefits, he could have only received compensation beginning approximately May 30, 2011.